# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 3, 2009 Session

## STATE OF TENNESSEE v. BRANDON KEITH OSTEIN
### AND TERESA GALE FOXX

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
No. 2006-A-568     Monte Watkins, Judge

---

**No. M2007-00925-SC-R11-CO - Filed August 20, 2009**

---

We granted permission to appeal in this case to address the circumstances under which the identity of a confidential informant must be disclosed pre-trial to a criminal defendant. Defendants Brandon Keith Ostein and Teresa Gale Foxx were arrested and charged with drug offenses after police officers executed a search warrant at Foxx's apartment. The affidavit in support of the search warrant referred to information provided by a confidential informant. Ostein and Foxx filed motions for disclosure of the informant's identity. After a hearing, the trial court concluded that the confidential informant was a material witness and ordered disclosure. The State sought and obtained an interlocutory appeal, and the Court of Criminal Appeals reversed the trial court. Ostein and Foxx sought permission to appeal, which we granted. Upon our close review of the limited record before us, we hold that Ostein and Foxx have failed to demonstrate by a preponderance of the evidence that the confidential informant is a material witness or otherwise important to their defense. The trial court ordered disclosure based on a clearly erroneous assessment of the evidence, resulting in reversible error. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Wendy S. Tucker, Nashville, Tennessee, for the appellant, Brandon Keith Ostein.

Eugenia R. Grayer, Nashville, Tennessee, for the appellant, Teresa Gale Foxx.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; Elizabeth T. Ryan, Associate Deputy Attorney General; Victor S. Johnson III, District Attorney General; and Hugh Ammerman, Assistant District Attorney General; for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 5, 2005, Detective Johnnie E. Melzoni, Jr. of the Metropolitan Nashville Police Department obtained a search warrant for the premises located at 1222 14th Avenue South in Nashville, Davidson County, Tennessee. The warrant was supported by an affidavit signed by Detective Melzoni on November 5, 2005. The affidavit provides in pertinent part as follows:

> Within the past 72 hours, I met with a confidential informant, hereafter referred to as "CI"; said CI had seen a large quantity of cocaine in the possession of Brandon Ostein aka "Snake" at 1222 14th Ave. S, Nashville, Davidson County, Tennessee. In the past 72 hrs, the CI observed Ostein cooking powder cocaine and making it crack cocaine inside the residence at 1222 14th Ave. S, Nashville, Davidson County, Tennessee. *The CI has seen Ostein and other persons in possession of cocaine and other drugs while inside the apartment in the past.* The CI has seen Ostein in possession of drugs and large amounts of currency in the past.
>
> In the past, CI has provided information and cooperation to members of the Metropolitan Nashville Police Department and different Federal Task Forces. The information and cooperation provided by CI has resulted in numerous arrests and convictions for narcotics and weapons related offenses, in the recovery of illegal controlled substances, and in seizure and forfeiture of proceeds from illegal activities or assets purchased with the illegal proceeds. CI is familiar with illegal controlled substances, including cocaine, from previous exposure. I will reveal the true name of the person identified in this affidavit as "CI" only to the Judge, issuing this search warrant. CI wishes to remain anonymous, due to fear of reprisals.

(Emphasis added).

Detective Melzoni executed the search warrant on November 10, 2005. Items seized during the search included approximately 441 grams of a powder that field-tested positive for cocaine; two guns and ammunition; several cell phones; thousands of dollars; and drug paraphernalia. Persons arrested at the scene included defendants Brandon Keith Ostein, named by the confidential informant, and Teresa Gale Foxx, the lessee of the apartment identified in the warrant. Ostein and Foxx were subsequently indicted for one count of knowingly possessing with intent to sell or deliver 300 grams or more of cocaine and one count of possession of drug paraphernalia with intent to prepare and package a controlled substance. The indictment alleges November 10, 2005, as the offense date.

Ostein and Foxx each filed a motion to compel the identification of the confidential informant referred to in Detective Melzoni's affidavit ("the CI"). Ostein asserted in his motion that the CI's identity was "material" to his defense and that disclosure was "crucial to his right to

2

confront and cross-examine the witnesses against him." Foxx moved for disclosure of "the names and whereabouts of any informant relied upon by the State of Tennessee or [who] participated in any transaction which is the gravam[e]n" of the charges.[1]

At the hearing on the motions, Detective Melzoni testified that he had been a police officer since January 1998. He began working on narcotics enforcement in September 2001. He was the lead officer in this case and served the search warrant while accompanied by several other officers. Detective Melzoni subsequently prepared an investigative report which was made an exhibit to the hearing. The report recites the following:

> I [Detective Melzoni] knocked on the rear door and announced "Police, search warrant, come to the door." At that time I heard people running/yelling from the rear of the apartment to the front. After waiting ample time for someone to open the door Det. Stokes began to ram the door open. At the same time myself and other officers heard the upstairs toilet flush several times, and the officers in front of the apartment reported that they had five people out front that ran out the front door. . . . I was the first to make entry, on the stove there was boiling water, baking soda and digital scales next to the stove. I observed the five people out front and then went upstairs where I had heard the flushing. I observed Haley lying down on a bed in Bd. #1, across the hall from the toilet. There was a large amount of cocaine in the water of the toilet and a broken beaker. Haley was the only person upstairs. . . . Ostein, Robinson, Person, Foxx, McCarrol w[]ere taken into custody after running out the front door. When McCarrol was stood up there was a large bag of crack cocaine . . . recovered from the area next to his feet. Person had a bag of crack cocaine . . . in the rear part of his underwear . . . .

> Det. Fox Mirandized all suspects and all stated that they understood their rights and agreed to speak with me about the incident. Foxx, who's on the lease, stated that she let Ostein and Haley cook and sell crack from her apartment and in return both Ostein and Haley would pay some of her bills, including her rent. . . . Ostein stated that he did not know anything about any drugs, guns or money. He could not explain how he had the currency, phones and vehicle that were on his person and at the scene. He could also not explain how he had a key that fit the door at [the premises]. . . . At the apartment Haley stated that none of the drugs were his and only stated that I should ask Ostein about the drugs and that he would claim them. . . . Later . . . Haley . . . stated that he admitted to having the drugs in the toilet and the gun, but the drug paraphernalia was not his . . . . McCarrol stated that nothing was his. Robinson stated that he had no job and that he had $1441.00 of US Currency on his person because girls loved him and gave him money. Person refused to comment on the incident . . . .

---

[1]Ostein and Foxx also each filed a motion to suppress, which the trial court denied. The motions to suppress are not before us in this appeal.

The report includes an inventory of items seized at the scene. Recovered from Ostein's person were a key that fit the door of the searched apartment, a cell phone, and $1,750 cash. Officers found no drugs or drug paraphernalia on Ostein's person. According to Detective Melzoni, the CI recognized Ostein during his observations but did not know the full names of the other persons he saw with Ostein. He knew only the partial name of "Haley" with respect to one of the other persons he saw. Detective Melzoni testified that he had spoken with the CI over the phone on November 10, 2005, prior to serving the search warrant. At that time, "the information he gave . . . was that he observed Mr. Ostein . . . cooking cocaine, making crack cocaine, at the stove. *That's the only person he saw*." (Emphasis added). This conversation between the detective and the CI occurred "probably around an hour" before Detective Melzoni served the warrant. According to Detective Melzoni, the CI's observation had occurred "around the time of [the CI's] phone call [to Detective Melzoni]" on November 10. Detective Melzoni testified that the CI was not present at the time the search warrant was served.

In ruling on the defendants' motions for disclosure of the CI's identity, the trial court found as follows:

> In the present case, the confidential informant provided information which led to the execution of a search warrant upon the residence of 1222 14th Avenue South in which seven [sic] individuals were arrested and several drugs and drug related items were found through out the residence. Testimony revealed that the CI reported observing the defendant Ostein in the kitchen cooking on previous occasions and on that day. Defendant Ostein was not observed personally by the officers in the kitchen cooking cocaine but was observed running out of the front door. Officer Melzoni was not sure what time the CI saw defendant Ostein in the kitchen. The CI also reported observing other individuals at the residence but did not indicate any names. *The confidential informant is a material witness to the activity of defendants Ostein and Foxx.* The confidential informant reported observing the defendant Ostein "cooking crack" in the kitchen to Officer Melzoni which he relied on in obtaining the warrant.

(Emphasis added). Based on these findings, the trial court concluded that "the identity of the confidential informant is material to the defense and should be disclosed."

The State sought and obtained an interlocutory appeal. The Court of Criminal Appeals reversed the trial court, noting that "first and foremost, [defendants Ostein and Foxx] did not establish by a preponderance of the evidence that the confidential informant's identity was material to their defense because the informant was a witness to the crime, participated in the crime, or possessed facts favorable or relevant to them." State v. Ostein, No. M2007-00925-CCA-R9-CO, 2008 WL 2229172, at *3 (Tenn. Crim. App. May 29, 2008). Upon reviewing the above-recited portions of the trial court's ruling, the Court of Criminal Appeals held that

> the trial court relied on allegations of what the informant saw on previous occasions to make its determination that the confidential informant was a material witness. The

4

observations made by the confidential informant were used only to obtain the search warrant, not to obtain the indictment against [Ostein and Foxx]. Presumably, the State's case against [Ostein and Foxx] will be based on information and evidence that the police obtained during the November 10, 2005 search of the residence, not the testimony or observations that the police received from the confidential informant prior to the application for the search warrant. In other words, we determine that the confidential informant's observations herein could only be relevant to the validity of the search warrant.

Id. at *4.

Ostein and Foxx sought this Court's permission to appeal, which we granted to address the circumstances under which a confidential informant's identity must be disclosed.

## STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision about whether to order the disclosure of a confidential informant's identity. See House v. State, 44 S.W.3d 508, 512 (Tenn. 2001); see also United States v. Sharp, 778 F.2d 1182, 1187 (6th Cir. 1985) (recognizing that "[t]he question of disclosure generally has been left in the first instance to the discretion of the trial court"); State v. Vanderford, 980 S.W.2d 390, 396, 397 (Tenn. Crim. App. 1997). We will find an abuse of discretion when the trial court applies an incorrect legal standard, or has reached an illogical or unreasonable decision that causes an injustice to the complaining party. State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006). Stated another way,

An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. Discretionary decisions must take the applicable law and *relevant facts* into account. Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, *based its decision on a clearly erroneous assessment of the evidence*, or employs reasoning that causes an injustice to the complaining party.

Konvalinka v. Chattanooga-Hamilton County Hosp. Auth., 249 S.W.3d 346, 358 (Tenn. 2008) (citations omitted) (emphases added).

## ANALYSIS

### I. The Informer's Privilege

It is common knowledge that law enforcement officers rely frequently on information provided to them by persons working undercover. Sometimes, these persons are other law enforcement officers. Other times, they are lay persons who secretly gather information from and

5

about their friends and neighbors regarding ongoing criminal activity. Maintaining secrecy about who is working undercover is crucial in order to (1) protect the informant from reprisals and (2) continue the flow of information. As recognized by one treatise,

> Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity–to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship.

8 Wigmore, Evidence § 2374 at 762 (McNaughton rev. 1961).

The United States Supreme Court recognized many years ago that the prosecution may withhold the identity of a confidential informant from the defense:[2]

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.

Roviaro v. United States, 353 U.S. 53, 59 (1957) (citations omitted). This Court has also long recognized the informer's privilege. See, e.g., House, 44 S.W.3d at 512; Goines v. State, 572 S.W.2d 644, 647 (Tenn. 1978); Wallis v. State, 417 S.W.2d 781, 784 (Tenn. 1967); Simmons v. State, 281 S.W.2d 487, 492 (Tenn. 1955). Tennessee's courts have stressed the public policies served by the privilege: "We recognize that the use of informants is a vital, and perhaps indispensable, part of society's defense against the ravages of the illicit traffic in drugs, and that forcing an undercover agent or informer to 'blow his cover' is generally not in the public interest." Goines, 572 S.W.2d at 647; see also United States v. Lloyd, 400 F.2d 414, 415 (6th Cir. 1968) ("The privilege of the Government to withhold the identity of informers is especially important in the enforcement of narcotic laws."). And, as recognized by our Court of Criminal Appeals,

> This practically universal rule is predicated on public policy and seeks to encourage citizens to assist in crime detection and prevention by giving information to law enforcement officials without unduly exposing themselves to the danger inherent in such laudable activity and to make possible their continued usefulness in future

---

[2]Indeed, "[t]he doctrine of the informer's privilege is not a recent phenomenon, having its roots in the English common law." Dole v. Local 1942, IBEW, AFL-CIO, 870 F.2d 368, 372 (7th Cir. 1989).

disclosures that the revelation of their identity would probably hamper and prevent.

Roberts v. State, 489 S.W.2d 263, 264 (Tenn. Crim. App. 1972).

The privilege is not absolute, but "is limited by its underlying purpose" and by "the fundamental requirements of fairness." Roviaro, 353 U.S. at 60.[3] Thus, while there is "no fixed rule with respect to disclosure," id. at 62, disclosure of the informant's identity must be made if relevant and helpful to the accused's defense,[4] or if essential to a fair determination of the prosecution, id. at 60-61; see also Goines, 572 S.W.2d at 647. For instance, disclosure is required when the informant (1) participated in the crime, (2) witnessed the crime, or (3) "has knowledge which is favorable to the defendant." Vanderford, 980 S.W.2d at 397; see also House, 44 S.W.3d at 513 (acknowledging that "Tennessee common law generally requires disclosure when the informant was a participant in the crime"); State v. Campbell, 549 S.W.2d 952, 954 (Tenn. 1977) (holding that trial court erred in failing to order disclosure of informant's identity where informant participated in crime); Sharp, 778 F.2d at 1186 n.2 (noting that "disclosure has usually been required when . . . the informer was an active participant in the events underlying the defendant's potential criminal liability"). Stated succinctly, an informer's identity "cannot be concealed from the defendant when it is critical to his case." Branzburg v. Hayes, 408 U.S. 665, 698 (1972).

When the informant was, however, "a mere tipster or introducer," disclosure has usually been denied. Sharp, 778 F.2d at 1186 n.2; see also United States v. Lewis, 40 F.3d 1325, 1335 (1st Cir. 1994) ("Where the informant is a 'mere tipster,' as opposed to an active participant in the offense charged, disclosure is required only in the exceptional case where it is vital to a fair trial."); People v. Langford, 550 P.2d 329, 331 (Colo. 1976) (En Banc) ("When all the evidence discloses that the informant was an informant and nothing more, the prosecution should not, as a general rule, be required to reveal his identity."). Similarly, disclosure of an informant's identity to a defendant for trial purposes is not required if the informant only provided information used to obtain a search warrant. See, e.g., Wells v. State, 509 S.W.2d 520, 521 (Tenn. Crim. App. 1973).

A defendant seeking disclosure must establish by a preponderance of the evidence circumstances entitling him or her to the confidential informant's identity. Vanderford, 980 S.W.2d at 397.[5] Mere "speculation . . . is not sufficient to meet the *heavy burden* which rests on an accused

_____

[3]As did the defendant in Roviaro, defendants in this case seek the CI's identity for trial purposes, not to attack the search warrant, e.g., Vanderford, 980 S.W.2d at 397, or to attack a warrantless arrest based on reports from an informant, e.g., Goines, 572 S.W.2d at 645.

[4]"[D]isclosure of the informant's identity may be required *prior to trial* to allow a defendant an adequate opportunity to prepare his defense." House, 44 S.W.3d at 515 (emphasis added).

[5]The United States Court of Appeals for the Sixth Circuit has adopted a shifting burden analysis. See Sharp, 778 F.2d at 1187. The defendant bears the initial burden of demonstrating that "it is reasonably probable that the informer can give relevant testimony." United States v. Eddings, 478 F.2d 67, 71 (6th Cir. 1973); see also Sharp, 778 F.2d at 1187. If the defendant meets this initial burden, "the burden should be on the Government to overcome this
(continued...)

to establish that the identity of an informant is necessary to his defense." United States v. Skeens, 449 F.2d 1066, 1070 (D.C. Cir. 1971) (emphasis added); see also United States v. Gonzales, 606 F.2d 70, 75 (5th Cir. 1979) (recognizing that "mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure"). The State is not required to divulge the identity of the informant if the defendant fails to establish the materiality of the confidential informant to his defense. Vanderford, 980 S.W.2d at 397.

The trial court's decision whether to order the disclosure of a confidential informant

calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Roviaro, 353 U.S. at 62.[6] We agree with the Sixth Circuit Court of Appeals that "danger to the informant's life must be given significant weight in striking" this balance. United States v. Straughter, 950 F.2d 1223, 1232 (6th Cir. 1991).

We turn now to the application of these principles to this case and begin our analysis with an examination of the charges brought against Foxx and Ostein.

*Possession of Cocaine with Intent to Sell or Deliver*

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (Supp. 2005). Cocaine is a Schedule II controlled substance. Id. § 39-17-408(a), (b)(4) (2003). Knowing possession with the intent to deliver or sell 300 or more grams of cocaine is a Class A felony. Id. § 39-17-417(j)(5). Ostein and Foxx were each charged with possession with intent to sell or deliver

---

[5](...continued)

inference with evidence that the informer cannot supply information material to the defense." Eddings, 478 F.2d at 71; see also Long v. State, 137 S.W.3d 726, 732 (Tex. Ct. App. 2004) (where defendant carries burden of showing that confidential informant may be able to provide testimony necessary to a fair determination of defendant's guilt, trial court must hold an in camera hearing to provide prosecution an opportunity to rebut). This Court has also adopted a two-step analysis when the failure to disclose is raised in the context of a post-conviction ineffective assistance of counsel claim. See House, 44 S.W.3d at 517. In House, we declared that, where a convicted defendant is alleging that his trial attorney was ineffective for failing to seek the identity of a confidential informant, the post-conviction court should first "hear evidence to determine whether testimony by the informant would be relevant. Once this threshold is met, a trial court should conduct an in camera proceeding to determine the informant's potential trial testimony." Id. Because we have concluded that neither defendant in this case has demonstrated that the CI possesses evidence relevant to the charges being prosecuted against them, we need not consider this shifting burden analysis.

[6]In striking this balance, the federal trial courts "have traditionally utilized *in camera* interviews in order to assess the relevance and possible helpfulness of the informant's identity to the defense." Sharp, 778 F.2d at 1187; see also House, 44 S.W.3d at 517.

300 grams or more of cocaine.

With respect to the mens rea element of "knowingly," our legislature has declared that a defendant "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Id. § 39-11-302(b) (2003). With respect to the element of possession, this Court has previously observed that "the statute prohibiting 'possession' of a controlled substance is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001). Accordingly, "although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." Id. at 846 (citation omitted). In addition to proving that the accused knowingly possessed the controlled substance, the prosecution must also prove that the accused intended to sell or deliver the substance. "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419 (2003). The State must also prove, of course, that the substance collected at the scene is the controlled substance alleged and was present in the amounts alleged.

*Possession of Drug Paraphernalia*

Tennessee Code Annotated section 39-17-425(a)(1) (2003) makes it unlawful to "possess with intent to use, drug paraphernalia to . . . prepare [or] . . . pack . . . a controlled substance . . . ." The State must prove three elements to establish a violation of this statute: "(1) that the defendant possessed an object; (2) that the object possessed was classifiable as drug paraphernalia; and (3) that the defendant intended to use that object for at least one of the illicit purposes enumerated in the statute." Ross, 49 S.W.3d at 846. A defendant may be found in constructive possession of these items. Id.

We turn now to whether either Foxx or Ostein has demonstrated, by a preponderance of the evidence, that pre-trial disclosure of the CI's identity was required. The proof submitted to the trial court at the hearing, and before us on appeal, consists of Detective Melzoni's testimony; the search warrant; the affidavit in support of the search warrant; Detective Melzoni's investigative report; and the inventory of seized property. Significantly, the State has asserted in its brief to this Court that its "case against the defendants is based upon evidence obtained during the November 10, 200[5], search of the residence, not on the information the police received from the informant and relied upon in securing a search warrant."

**FOXX**

Based on the scant record before us, it appears that the State charged Foxx with committing offenses on November 10 because (1) she was the lessee of the residence where the drugs and paraphernalia were found; (2) she was in the residence at the time of the search; (3) she admitted to

officers that she allowed Ostein and Haley to "cook and sell crack from her apartment" in return for their payment of her rent and other expenses; and (4) there was a large amount of cocaine found on the premises she controlled together with active use of drug paraphernalia. Sufficient proof of these facts at trial will assist the prosecution in establishing that Foxx is guilty of the crimes of (1) possession of cocaine with intent to sell or deliver and (2) possession of drug paraphernalia with an intent to prepare and package a controlled substance. It does not appear that the State will need to rely on anything that happened or existed prior to the search in order to prove its case against Foxx.

Counsel for Foxx argued to the trial court that the CI's identity was "required to allow [Foxx] to have an adequate opportunity to prepare the defense . . . because this informant never mention[ed] [Foxx's] name, and/or description." According to Foxx's counsel, the CI could explain "what occurred at that house" and "what was actually known by [Foxx]." The trial court was apparently swayed by this argument and determined that "[t]he confidential informant is a material witness to the activity of . . . Foxx."

We respectfully disagree. As recognized by Foxx, there is no indication that the CI ever observed *her* in the apartment prior to the search. Moreover, although it is possible that the CI witnessed some of Foxx's activities prior to execution of the search warrant, that is not enough to require disclosure. According to Detective Melzoni, the CI was not present during the search, and thus did not witness the events on which the charges are based. The only person the CI reportedly saw an hour before the search was Ostein. The only other reported observations by the CI occurred at some point prior to Detective Melzoni preparing his affidavit *five days prior to the search*. Accordingly, the CI is *not* a material witness to the events that actually led to Foxx's arrest on November 10. The CI's observations were certainly helpful to Detective Melzoni in obtaining the search warrant, but, in this case, they place the CI firmly in the category of "tipster" rather than material witness. The trial court's characterization of the CI as a material witness was therefore clearly erroneous.

Foxx asserts in her brief to this Court that the CI has information that "could aid in establishing the defense of mere presence, lack of intent, facilitation, duress, or non participation." She fails, however, to explain what information the CI has that would be relevant to establishing any of these "defenses" or even to challenging the State's proof. There is absolutely no indication in the record that the CI would contradict Foxx's admission that she is a lessee of the premises, or that she sold the use of her premises for the preparation and sale of crack cocaine. Detective Melzoni's testimony that, an hour before the search, the CI claimed to have seen Ostein in Foxx's kitchen cooking cocaine, indicates that the CI might have knowledge *damaging* to Foxx's case, but not knowledge that is helpful to any defense Foxx appears to be contemplating. Further, that, according to Detective Melzoni's November 5 affidavit, "the CI has seen Ostein and other persons in possession of cocaine and other drugs while inside the apartment in the past," does not establish that the CI could assist Foxx in proving that she was not actively involved in, or criminally responsible

for,[7] the November 10 drug offenses with which she is charged. We emphasize, as did the Court of Criminal Appeals, that the charges against Foxx arose out of what police officers discovered during the *search–not* the CI's reports of earlier drug-related activity, which were relevant only to establish probable cause for the search warrant. What the CI observed days prior to the arrival of the police officers is simply not relevant under the facts and circumstances of this case, at least as they have been developed thus far.

With respect to Foxx's reference to "duress," it is conceivable that the CI could state that he or she or someone known to the CI somehow forced Foxx to participate in the drug-related activities being pursued in her residence, thereby offering evidence in support of the affirmative defense of duress,[8] but Foxx has certainly not offered any proof to that effect; and, obviously, she would know if she were being forced in some manner to participate in the illegal activities, even if it is possible that she would not know her antagonist's identity.

Our close review of the proof adduced at the motions hearing in this case convinces us that Foxx has failed to establish any criteria for the disclosure of the CI's identity. Accordingly, we hold that the trial court based its ruling on a clearly erroneous assessment of the evidence when it ordered disclosure of the CI's identity to Foxx, resulting in reversible error. See Sharp, 778 F.2d at 1187 (holding that trial court abused its discretion in ordering disclosure where defendant failed to produce evidence in support of his claim that the informant would support his entrapment defense). The Court of Criminal Appeals was therefore correct in reversing the trial court's ruling.

## OSTEIN

On the record currently before us, the State's case against Ostein appears somewhat weaker because, unlike Foxx, Ostein apparently made no incriminating statements at the scene. Rather, Detective Melzoni's investigative report recites that Ostein "stated that he did not know anything about any drugs, guns or money." While officers recovered from Ostein's person a key to the apartment, a cell phone, and $1,750 in cash, Ostein apparently gave no explanation for his possession of these items. Certainly, mere possession of these things is not a crime. The State's case against Ostein therefore appears to rest on his presence at the apartment[9] during the search; the large amount of drugs found on the premises; the items found on Ostein's person (in conjunction with his proximity to the drugs and paraphernalia); and Foxx's statement that she let Ostein "cook and sell crack from her apartment." According to the State's brief to this Court, its case against Ostein does

---

[7]"A person is criminally responsible for an offense committed by the conduct of another, if . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (2003). It is certainly possible that the prosecution intends to prove Foxx's guilt of the possession charges under the theory that she aided Ostein in committing the possession offenses in return for his payment of her rent.

[8]See Tenn. Code Ann. § 39-11-504 (2003).

[9]Based on Ostein's possession of a key to the apartment, the State may also intend to prove that Ostein had control over the premises.

11

not rely on any reports the police received from the CI prior to the search. The CI is not, therefore, a participant in or material witness to the events which resulted in the instant charges against Ostein.

Ostein (through counsel) argued to the trial court that, based on Detective Melzoni's affidavit in support of the search warrant and his testimony at the hearing, the CI was in a position to show that Ostein was not guilty of possessing 300 grams or more of cocaine as charged in the indictment. Ostein claimed that the CI has "knowledge that other people were in possession of drugs in that home." Indeed, Ostein asserted to the trial court that the CI was "a witness to the crime" in spite of the CI's absence from the scene when the police conducted the search. He also told the trial court that "the only information linking him to those drugs, other than mere presence . . . is this confidential informant."

Ostein echoes these assertions in his brief to this Court: the CI's identity must be disclosed to him because he or she "can establish that other persons were in possession of cocaine in this residence near the time of the search warrant." Ostein contends that

> [t]his is critical information for [his] defense, as [he] was not in possession of any drugs or paraphernalia at the time that officers entered the home, and as this home was not his residence. . . . Thus, information regarding others who possessed cocaine in the home during this time frame is highly exculpatory evidence which will greatly benefit [his] defense. Even if the jury believes that [he] possessed some of the drugs in the home, the observations of the informant would at the very least provide a defense to the allegation that Ostein possessed over 300 grams, especially given the fact that the cocaine was found in all different areas of the home and on other persons.

Ostein continues:

> Detective Melzoni's testimony established that the informant can identify one clear alternative suspect in this case, co-defendant Hailey.[10] . . . The record establishes that the informant saw Hailey in that same house in possession of cocaine close in time to when the search warrant was served. This testimony, which is hearsay unless presented from the informant himself, is critical to Ostein's defense. Furthermore, only the informant can give counsel information regarding any others seen in possession of cocaine in the home near the timeframe of the search warrant. Those persons, like Hailey, would be potential alternative suspects in this case.

Initially, we are constrained to note certain inaccuracies in Ostein's assertions. The only proof in the record about what was occurring in the apartment prior to the search comes from Detective Melzoni. He testified that he spoke with the CI approximately an hour before executing

---

[10]The indictment and Detective Melzoni's report refer to a "Haley." Because it is not material, we have not attempted to resolve the inconsistent spellings.

the warrant. At about that same time, the CI "observed Mr. Ostein . . . cooking cocaine, making crack cocaine, at the stove. *That's the only person he saw.*" Thus, the record before us refutes Ostein's claim that the CI can establish that others were in possession of the cocaine shortly before the warrant was executed. Also, Ostein asserts that the CI is the only person that can inform him about potential alternative suspects. Obviously, however, Ostein's codefendants who were present during the search are the potential alternative suspects.

Ostein clearly desires the CI's assistance in attacking the sufficiency of the State's proof that he possessed all of the drugs found in the apartment. He argues that the CI's reported observations of *"others"* in possession of the drugs at some earlier date before the search will somehow protect him from being found in possession of them at the time of the search. We are not persuaded. First, as with Foxx, Ostein is being prosecuted for the crimes that the prosecution believes he was committing *at the time the search warrant was executed*, not at some prior point in time. The CI was not present at the relevant time. Thus, even if the CI would testify that he or she saw Haley (or others) in possession of some amount of cocaine *before* the police arrived, this would not defeat (or be relevant to) the State's claim that Ostein was in actual or constructive possession *when* the police arrived. Cf. Vanderford, 980 S.W.2d at 397 (holding that disclosure of confidential informants' identities was not required where the prosecution was based on evidence seized pursuant to a search warrant and not on prior purchases of illegal substances by confidential informants); United States v. Sales, 247 Fed. Appx. 730, 735 (6th Cir. 2007) (defendant not entitled to disclosure of confidential informant's identity where defendant was "not charged for the events occurring during the controlled purchase made by the CI, but rather for the possession of the drugs and firearms the police located during the search of [defendant's] residence"); Lewis, 40 F.3d at 1335-36 (defendant not entitled to disclosure where police arrested defendant twenty minutes after speaking with informant because informant "was not present at the scene of the arrest . . . and, thus, was in no position to amplify, contradict, or clear up the testimony of any government witness"). Second, Ostein can, if he chooses, testify about who actually possessed the drugs. Moreover, he may have the opportunity to call one or more of his codefendants to testify on his behalf. Since they were at the scene at the time the warrant was executed, and the CI was not, their information is certainly more relevant than any the CI might have. Thus, the notion that *only* the CI can testify about what the remaining suspects were doing prior to the search is simply inaccurate.

Finally, as to proving that someone else possessed the majority of the cocaine, Detective Melzoni's report indicates that the cocaine was found in various amounts in various places. The report recites that Haley "admitted to having the drugs in the toilet." According to the report, the drugs in the toilet totaled 204 of the total 441 grams recovered during the search. Additionally, Detective Melzoni's report reflects that approximately 106 grams were found "next to [codefendant] McCarrol" and another 2.9 grams were found on codefendant Person's person. Ostein can therefore adduce this proof through Detective Melzoni, rendering any speculated similar testimony by the CI cumulative and unnecessary. See Tenn. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed . . . by considerations of . . . needless presentation of cumulative evidence.").

In sum, our close review of the record establishes that, like Foxx, Ostein has not provided *any* evidence that the CI was a participant in, or witness to, the crimes with which he has been charged. Moreover, he has not established by a preponderance of the evidence that the CI has information relevant or helpful to his defense. Thus, Ostein is not entitled to disclosure of the CI's identity, and the trial court committed reversible error in so ruling.

## II.  Constitutional Claims

In their briefs to this Court, Foxx and Ostein both claim that their constitutionally guaranteed rights to due process, to prepare and present a defense, and to a fair trial, will be violated if the prosecution does not disclose the CI's identity. We respectfully disagree.

### A.  The Federal Constitution

Although Defendants have referred generally to their rights under the Sixth and Fourteenth Amendments to the United States Constitution,[11] neither Foxx nor Ostein has cited to a United States Supreme Court case identifying a "free-standing" federal constitutional right to the disclosure of a confidential informant's identity, and we have found none. Indeed, the Supreme Court has described its decision in Roviaro as merely an exercise of its "supervisory jurisdiction" over the federal rules of evidence and which "ma[de] clear . . . that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials." McCray v. Illinois, 386 U.S. 300, 309, 311 (1967); see also Banks v. Dretke, 540 U.S. 668, 697 (2004) (referring to the issue in Roviaro as one of "evidentiary law"). Rather, the Court in McCray referred to the informer's privilege as simply "a well-established testimonial privilege, long familiar to the law of evidence," McCray, 386 U.S. at 308, and rejected the petitioner's claim that the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment compelled that the informer's privilege be abolished in the context of a challenge to probable cause, id. at 312-13; see also United States v. Moore, 954 F.2d 379, 381 (6th Cir. 1992) (recognizing that the Sixth Amendment right to confront witnesses is not abrogated by the prosecution's refusal to disclose a confidential informant where "the evidence upon which a defendant is convicted was secured personally by government agents who testified").

It is true, of course, that the Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions "comport with prevailing notions of fundamental fairness," California v. Trombetta, 467 U.S. 479, 485 (1984), and this standard of fairness requires that criminal defendants "be afforded a meaningful opportunity to present a complete defense," id. Accordingly, the Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982). For instance, under

---

[11] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. This provision of the Sixth Amendment is applicable to the states through the Fourteenth Amendment. Washington v. Texas, 388 U.S. 14, 17-18 (1967). The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1.

Brady v. Maryland, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). And the prosecution must disclose exculpatory evidence that would raise a reasonable doubt about the accused's guilt even without a specific request. United States v. Agurs, 427 U.S. 97, 110-12 (1976). See also Napue v. Illinois, 360 U.S. 264, 269-272 (1959) (requiring the prosecution to report to the defendant and the trial court a government witness's lies under oath); Giglio v. United States, 405 U.S. 150, 154-55 (1972) (requiring the prosecution to reveal the contents of plea agreements with key government witnesses).

The Supreme Court has referred to Roviaro as belonging to this line of decisions. See, e.g., Trombetta, 467 U.S. at 485; see also United States v. Raddatz, 447 U.S. 667, 679 (1980) (referring to Roviaro as holding that the Due Process Clause requires disclosure of an informant's identity at trial where "shown to be relevant and helpful to the defense"); Gravel v. United States, 408 U.S. 606, 646 (1972) ("The constitutional demands for a fair trial, implicit in the concept of due process, override the Government's desire for secrecy, whether the identity of an informer or executive privilege be involved.") (citation omitted). It has also, however, made clear that, when a defendant seeks to compel the government to provide access to a potential but otherwise unavailable witness, the defendant bears the burden of demonstrating that the witness's anticipated information "would be both material and favorable to the defense." Valenzuela-Bernal, 458 U.S. at 873 (construing the Due Process Clause of the Fifth Amendment and the Sixth Amendment right to compulsory process). A witness's anticipated testimony is material if it might affect the outcome of the trial. See id. at 868.

As set forth above, Foxx and Ostein have failed to establish that the CI in this case, who provided information upon which Detective Melzoni relied in seeking a search warrant but who was not present at the scene of (and did not participate in) the crimes charged, possesses any information that is either material or favorable to their defense. Rather, these defendants rely on vague, conclusory allegations that the CI (1) possesses information about who was doing what during the days and hours *before* the search warrant was executed and (2) that this information would aid them in their defense. Their "mere invocation" of the right to present a defense does not automatically outweigh, however, the public policies favoring the protection of confidential informants. Taylor v. Illinois, 484 U.S. 400, 414 (1988); Moore, 954 F.2d at 381. If these defendants were entitled to disclosure on the record before us, it would be a rare case indeed in which an informant's identity could be kept confidential where his or her information was relied upon in obtaining a search warrant. The federal constitution does not require this result, and public policy is set firmly against these defendants' overstated position.

Accordingly, we hold that the Court of Criminal Appeals' judgment that neither Foxx nor Ostein is entitled to disclosure of the CI's identity has not violated their rights under the federal constitution, and neither of them is entitled to relief on this basis.

15

## B. The Tennessee Constitution

Similarly to its federal counterpart, the Tennessee Constitution provides that no person "shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8. This "law of the land clause" is "synonymous with the 'due process' provisions of the federal constitution." Willis v. Tenn. Dept. of Correction, 113 S.W.3d 706, 711 n.4 (Tenn. 2003). And like the Sixth Amendment, the Tennessee Constitution also provides that a criminal defendant has the right "to have compulsory process for obtaining witnesses in his favor." Tenn. Const. art. I, § 9. In accord with the federal constitution, this provision applies only when the proposed witness is material. See Bacon v. State, 385 S.W.2d 107, 109 (Tenn. 1964); State v. Smith, 639 S.W.2d 677, 680 (Tenn. Crim. App. 1982).

This Court has not previously held that either or both of these provisions necessarily entitle a criminal defendant to disclosure of a confidential informant's identity. Rather, this Court has observed that, in general, a defendant "ha[s] no constitutional right to require the disclosure of [an] informant's name." Wallis, 417 S.W.2d at 784 (citing Simmons, 281 S.W.2d at 487); accord House, 44 S.W.3d at 512; see also Vanderford, 980 S.W.2d at 396. And while we can imagine circumstances in which a confidential informant's identity might be so crucial to an accused's defense that these constitutional protections would be implicated, this case does not present those circumstances. Accordingly, neither Foxx nor Ostein is entitled to relief on their claims under the Tennessee Constitution.

## C. Ineffective Assistance of Counsel

Foxx additionally alleges in her brief to this Court that the CI's identity "must be revealed in order to preserve [her] right to effective assistance of counsel . . . ."[12] We disagree. This Court has recognized that a lawyer may be found ineffective for failing to request disclosure where the confidential informant was a material witness to the charged crime and could testify regarding the identification of the defendant. House, 44 S.W.3d at 515-16. As set forth above, the CI in this case was neither a participant in, nor material witness to, the crimes charged in this case. Foxx is not entitled to disclosure on this basis, and her lawyer's failure to obtain the CI's name on her motion for same does not provide Foxx with a viable claim for ineffective assistance of counsel.

---

[12]A criminal defendant is entitled to the effective assistance of counsel under both the federal and state constitutions. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9.

**CONCLUSION**

The trial court based its ruling on a clearly erroneous assessment of the evidence and therefore committed reversible error in ordering the prosecution to disclose the CI's identity to Foxx and Ostein. The Court of Criminal Appeals was correct in reversing the trial court's ruling. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

The costs of this cause are taxed equally to defendant Brandon Keith Ostein and defendant Teresa Gale Foxx, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE