IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2018

## STATE OF TENNESSEE v. HEATHER MONTGOMERY

**Appeal from the Criminal Court for Knox County**
**No. 105486B          Steven Wayne Sword, Judge**

_____

### No. E2018-00388-CCA-R3-CD

_____

On August 26, 2016, the Defendant, Heather Montgomery, was convicted of two counts of sale of less than fifteen grams of heroin within 1,000 feet of a park and two counts of delivery of less than fifteen grams of heroin within 1,000 feet of a park. Counts 2 and 4 were merged into Counts 1 and 3, and the Defendant was sentenced as a Range I, standard offender to an effective 8-year term, to be served at 100% in the Department of Correction. The Defendant argues on appeal that the trial court abused its discretion is neither excluding the testimony of a confidential informant or granting a continuance and that the evidence is insufficient to sustain her convictions. After thorough review, we affirm the judgments of the trial court but remand for entry of corrected judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed;**
**Case Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Gulley, Jr., (on appeal), Mitchell Harper, (at trial), Knoxville, Tennessee, for the appellant, Heather Montgomery.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On May 12, 2015, a Knox County grand jury returned a presentment charging the Defendant with two counts of sale of less than fifteen grams of heroin within 1,000 feet of a park and two counts of delivery of less than fifteen grams of heroin within 1,000 feet of a park. Her co-defendant was also charged with various offenses. Following a jury trial, the Defendant was convicted as charged. We now review the facts relevant to this appeal.

On the morning of trial, the defense orally moved to exclude the confidential informant's testimony, arguing that the State had not disclosed the confidential informant's identity, which prevented the Defendant from "attack[ing] the credibility of this live witness[.]" The defense alternatively argued for a continuance. The State countered that it had disclosed the confidential informant's name that morning and had also turned over the recording of the first sale between the informant and the Defendant, as well as the police officer's notes from the second sale. The State further argued that it had assumed the Defendant knew who the confidential informant was, based on their previous relationship and the recording and case notes. The defense conceded that it knew the confidential informant's identity already and had looked into her criminal history, but it had not filed a motion to compel the disclosure of her identity. The trial court denied both the oral motion to exclude and the request for a continuance, reasoning that the defense could have sought disclosure of the informant's identity well before the morning of trial and that the defense already had information on the confidential informant.

At trial, Officer Robert Rose of the Knoxville Police Department testified that he met Kathleen Rowe when he arrested her for manufacturing methamphetamine. Ms. Rowe became a confidential informant for the Knoxville Police Department after agreeing to "do some undercover buys" in order to "work down her charges." When Ms. Rowe alerted Officer Rose that the Defendant was selling heroin, the police department set up a "controlled buy," in which the police search the informant and her car to make sure there are no drugs or money present, give the informant money with documented serial numbers, and provide the informant with a recorder or transmitter. Officer Rose testified that the police then typically follow the informant to where she makes the purchase, after which they follow her back to the police station, she gives the drugs to the police, and they search her and her car a second time.

Officer Rose testified that they planned a controlled buy from the Defendant on December 8, 2014, using the typical controlled buy procedures. Ms. Rowe was given an audio and video recorder and transmitter to use during the buy. Officer Rose and another officer followed Ms. Rowe to the Defendant's apartment and monitored the encounter from across the street, while Officer Brandon Stryker monitored the encounter from "an elevated position to the apartments where he could see down into the courtyard of the

apartments." Officer Rose testified that they could hear the entire encounter and at one point became afraid that the Defendant would find the recording equipment on Ms. Rowe. After the buy, the officers followed Ms. Rowe back to the police department, and Officer Rose retrieved from her car's ashtray "two small pieces of aluminum foil that were rolled up . . . which turned out to be heroin," and officers again searched her person and her car.

Officer Rose testified that Ms. Rowe made a second controlled buy from the Defendant on January 6, 2015. Because the Defendant almost found the recording equipment on Ms. Rowe during the first buy, six total officers monitored the second encounter "in case [they] had to go in." Officer Rose testified that he could hear two women over the transmitter, followed by a man entering and exiting the apartment, after which the two women resumed talking. Following the buy, officers followed Ms. Rowe back to the police department, where she again gave them two heroin packets from the controlled buy, which were wrapped in paper rather than aluminum. On cross-examination, Officer Rose affirmed that Ms. Rowe had previously been arrested for manufacturing methamphetamine and filing a false report.

Officer Adam Broome of the Knoxville Police Department testified at trial that he was one of the officers who worked with Ms. Rowe for the January 2015 controlled buy. Following the buy, Ms. Rowe gave the purchased heroin packets directly to Officer Broome, who held onto them until Officer Rose arrived back at the police department. Officer Brandon Stryker of the Knoxville Police Department testified that he provided surveillance during the controlled buys and watched Ms. Rowe enter and leave the Defendant's apartment.

Ms. Rowe's testimony largely echoed that of Officers Rose and Broome. She stated that officers searched her and her car before and after the controlled buys. Ms. Rowe testified that she went to the Defendant's residence to make the controlled buys and had been there on previous occasions. She stated that during the first controlled buy, the Defendant became suspicious that she was wearing a wire. Following a confrontation, she followed the Defendant to her daughter's bedroom where she handed the Defendant money, and the Defendant handed her "tin square[s]" of heroin. During the second controlled buy, Ms. Rowe placed money on a coffee table in the Defendant's apartment, and the Defendant went to her daughter's bedroom and placed heroin on the coffee table when she returned. Ms. Rowe verified that she wore recording equipment during both controlled buys. On cross-examination, Ms. Rowe affirmed that she had known the Defendant for about a year at the time of the controlled buys, and she had previously lived with the Defendant. She further admitted on cross-examination that she was a recovering drug addict and had been paid to be a confidential informant. Ms. Rowe acknowledged that following the first controlled buy, she placed the heroin in her

car's ashtray, rather than handing it directly to an officer like she did following the second buy.

Lieutenant Tony Willis of the Knoxville Police Department testified that he was the supervisor of the repeat offender squad and conducted surveillance with Officer John Holmes during the second controlled buy. On cross-examination, he admitted that Ms. Rowe had been convicted of forgery in Arizona and charged with lying to a Knoxville Police Department officer. He stated that he had discussed any concerns with using Ms. Rowe as a CI both internally and with the district attorney's office. Officer Holmes affirmed that he had conducted surveillance with Lieutenant Willis during the second controlled buy and had been involved in the co-defendant's arrest.

Mollie Stanfill and Sharon Norman, both forensic scientists with the Tennessee Bureau of Investigation, testified as experts in forensic chemistry. Ms. Stanfill testified that she identified "two individual packages" as containing a total of .21 grams of heroin and included such information in her forensic chemistry report. Ms. Norman testified that she identified two pieces of aluminum foil as containing a total of .08 grams of heroin and included her findings in her respective forensic chemistry report.

Jimmy Brink testified that he worked for Knoxville Geographic Information Systems ("KGIS") and determined distances for "the prohibited zones, the school zones, and the park zones, and the child care agency zones" as part of his employment. He affirmed that, based on the maps and measurements created by KGIS, the Defendant's apartment was located within 1,000 feet of a park, an elementary school, and a children's daycare center. Karen Briggs testified that she worked for the Knoxville Parks and Recreation Department and affirmed the existence of a park within 1,000 feet of the Defendant's apartment. Ansley Taylor testified that she worked for the Tennessee Department of Human Services handling the licensing of children's daycare centers and affirmed the existence of a daycare within 1,000 feet of the Defendant's apartment. Paul Pinkston testified that he worked for Knox County Schools as a school security officer, and he affirmed the existence of an elementary school within 1,000 feet of the Defendant's apartment.

Following the close of all proof, the Defendant was convicted of two counts of sale of less than fifteen grams of heroin within 1,000 feet of a park and two counts of delivery of less than fifteen grams of heroin within 1,000 feet of a park. Counts 2 and 4 were merged into Counts 1 and 3, and the Defendant was sentenced as a Range I, standard offender to an effective 8-year term, to be served at 100% in the Department of Correction.

## ANALYSIS

- 4 -

# I. Confidential Informant's Testimony

"[Q]uestions concerning the admissibility of evidence rest within the sound discretion of the trial court" and will not be disturbed absent a showing of an abuse of discretion. See State v. Pylant, 263 S.W.3d 854, 870 (Tenn. 2008) (citations omitted). A trial court is found to have abused its discretion when it applies "an incorrect legal standard, or [reaches] a decision which is illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (citing Howell v. State, 185 S.W.3d 319, 337 (Tenn. 2006)).

Although a confidential informant's identity is generally protected, this court recognized in State v. Vanderford, 980 S.W.2d 390 (Tenn. Crim. App. 1997), that the State may be required to divulge an informant's identity when (a) disclosure would be relevant and helpful to the defendant in presenting his defense and is essential to a fair trial, (b) the informant was a participant in the crime, (c) the informant was a witness to the crime, or (d) the informant has knowledge that is favorable to the defendant. Id. at 397 (citations omitted). The defendant "has the burden of establishing by a preponderance of the evidence that the confidential informant's identity is material to his defense because the informant was a witness to the crime, participated in the crime, or possesses facts favorable or relevant to the defendant." Id. Mere "speculation . . . is not sufficient to meet the heavy burden which rests on an accused to establish that the identity of an informant is necessary to his defense." State v. Ostein, 293 S.W.3d 519, 528-29 (Tenn. 2009). The decision of whether the State should be required to disclose the identity of a confidential informant lies within the sound discretion of the trial court. Vanderford, 980 S.W.2d at 396. The State is not required to divulge the identity of the informant if the defendant fails to establish the materiality of the confidential informant to his defense. Id. at 397. A trial court's decision about whether to order the disclosure of a confidential informant's identity is reviewed by this court for an abuse of discretion. Ostein, 293 S.W.3d at 526 (citing House v. State, 44 S.W.3d 508, 512 (Tenn. 2001); United States v. Sharp, 778 F.2d 1182, 1187 (6th Cir. 1985); Vanderford, 980 S.W.2d at 396-97).

The record indicates that the Defendant did not file a motion to compel the disclosure of the CI's identity at any time and only orally mentioned such an issue to the trial court at the beginning of the trial. When questioned, the defense conceded that although the State disclosed the CI's full name that morning, the Defendant already knew the CI's identity and had "some history on her." In response, the trial court reasoned that the defense "could have filed a motion to reveal her identity earlier and dealt with it then," but instead waited until the morning of trial. The State also informed the trial court that although it did not reveal the CI's name until the morning of trial, the State did "turn over to the defense all of the police reports that document their interaction with the

CI and . . . the CI's interaction with [the Defendant]," as well as "the recording of the actual transaction on the first incident" and "the police officer's notes on the second incident."

We initially note the opening statements were not included in the trial transcript, so it is unknown what the defense said about the CI during such statements. During the defense's cross-examination of Officer Rose, the defense questioned him about Ms. Rowe's manufacturing methamphetamine charge. The defense asked Officer Rose to affirm details of the charge, including discovering a "meth lab" in Ms. Rowe's mother's home. Officer Rose further affirmed that Ms. Rowe "was in the meth world[.]" The defense also questioned Officer Rose regarding Ms. Rowe's filing a false report charge, and he affirmed the defense's assertion that it stemmed from her lying about her co-defendant's whereabouts in the manufacturing methamphetamine case. The defense also asked Officer Rose, "[W]hen or did you find out about the fact that Ms. Rowe had been convicted out in Arizona?" Officer Rose responded that his department knew about Ms. Rowe's criminal history and discussed it with the district attorney's office before proceeding.

During Ms. Rowe's cross-examination, the defense questioned her about her relationship with the Defendant, including the two times she lived with her. Further, the defense asked Ms. Rowe about her relapse into using methamphetamine, her "drug of choice," at which time she again lived with the Defendant. When questioned, she admitted that her boyfriend, who was also using methamphetamine, also lived with her at the Defendant's apartment after she was kicked out of a "transitional facility." The defense asked Ms. Rowe whether she was working as a CI because "[she] was charged with manufacturing methamphetamine in a park zone" and "lying to officers about where [her co-defendant in that case] was[.]" She stated that she was paid to work as a CI.

The Defendant argues on appeal, as was argued at the motion for new trial hearing, that the State's timing of disclosing Ms. Rowe's identity prevented her from more thoroughly researching Ms. Rowe's criminal history, specifically her forgery conviction in Arizona. However, the Defendant fails to offer any arguments about what further information might have been discovered had she known every detail surrounding Ms. Rowe's forgery conviction in Arizona and how such information might have led to a different trial result. Even if the Defendant did not know all of the circumstances surrounding the Arizona forgery conviction, the defense conceded that it knew about the conviction before trial. Further, the defense was able to cross-examine both Ms. Rowe and Officer Rose regarding her charges for methamphetamine and filing a false report and her previous relationship with the Defendant. The jury heard testimony from Lieutenant Willis that Ms. Rowe had been convicted of forgery in Arizona, and his department and the district attorney's office discussed any concerns with using Ms. Rowe

as a CI. As the trial court noted, the defense could have filed a motion to compel Ms. Rowe's identity prior to trial and chose not to do so. The Defendant has failed to establish that the trial court abused its discretion in any manner.

## II. Continuance

The granting of a continuance lies within the sound discretion of the trial court, and we will not reverse that decision absent a showing of an abuse of discretion and prejudice to the Defendant. State v. Schmeiderer, 319 S.W.3d 607, 617 (Tenn. 2010) (citing State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004)). "'An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted.'" Id. (quoting State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995)).

The trial court's denial of a continuance was a reasonable exercise of its discretion, given that the request was made at the start of trial and there had been no prior requests made for the State to disclose the CI's identity, and the defense already knew her identity. Although the Defendant's request was based on the defense needing more time to investigate Ms. Rowe's criminal history in order to impeach her, the record on appeal indicates that the defense could have filed a motion to compel Ms. Rowe's identity before trial and chose not to, and the defense was able to impeach Ms. Rowe with her other criminal history. Further, although the defense did not know the exact details of Ms. Rowe's Arizona forgery conviction, the jury still heard that such a conviction existed. Therefore, the evidence supports the trial court's determination that a continuance was not necessary to ensure that the Defendant received a fair trial.

## III. Sufficiency of Evidence

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all

conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Dorantes, 331 S.W.3d at 379.

Tennessee Code Annotated sections 39-17-417(a)(2-3) states, "It is an offense for a defendant to knowingly: . . . (2) Deliver a controlled substance; (3) Sell a controlled substance[.]" "Deliver" is defined as the actual, constructive, or attempted transfer from one person to another of a "controlled substance," which is defined as a drug, substance,

or immediate precursor in Schedules I through VII of Tennessee Code Annotated sections 39-17-403 through 39-17-416. Tenn. Code Ann. §§ 39-17-402(6), -402(4). Heroin is classified as a Schedule I substance. Id. § 39-17-406(c)(11). When the foregoing offense is committed within 1,000 feet of a park, it "shall be punished one classification higher," Id. § 39-17-432(b)(1), and the offender "shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence[.]" Id. § 39-17-432(c). However, a violation "within the prohibited zone of a . . . park shall not be subject to additional incarceration . . . but shall be subject to the additional fines imposed by this section." Id. § 39-17-432(b)(3).

The Defendant argues that the evidence is insufficient to sustain her convictions because "irregular procedures" were used in the controlled buys and because Ms. Rowe has "a history of criminal charges in multiple states[,]" creating "a reasonable doubt about her veracity[.]" Both of these arguments represent matters of credibility. Both Officer Rose and Ms. Rowe testified to the procedures that were used for the controlled buys, and both stated that Ms. Rowe was not strip or cavity searched. Further, both Officer Rose and Ms. Rowe conceded that following the first controlled buy, Ms. Rowe placed the purchased heroin in her car's ashtray rather than handing it directly to an officer. The defense also questioned both Officer Rose and Ms. Rowe about her charges for manufacturing methamphetamine and lying to a police officer, and Officer Rose confirmed that Ms. Rowe had a conviction from Arizona. Officer Rose further testified that he had considered Ms. Rowe's criminal history before the police department and district attorney decided to use her as a confidential informant. Lieutenant Willis testified that the Arizona conviction was for forgery and that he had also considered Ms. Rowe's criminal history. The jury heard the testimony regarding Ms. Rowe's methamphetamine addiction, previous charges, and her Arizona forgery conviction but accredited her testimony anyway.

Viewed in the light most favorable to the State, the evidence shows that police gave Ms. Rowe recording equipment and money with recorded serial numbers to purchase heroin from the Defendant on December 8, 2014. Police searched Ms. Rowe and her car prior to the controlled buy and watched her enter the Defendant's apartment, which was within 1,000 feet of a park, an elementary school, and a children's daycare center. Police heard two women tensely talking on the audio feed, and Ms. Rowe testified that the Defendant was suspicious that she was wearing a wire. Ms. Rowe received packets of heroin from the Defendant in exchange for the money police had given her. After the buy, police followed Ms. Rowe back to the police station where they recovered the purchased heroin. Police searched Ms. Rowe and her car after recovering the purchased heroin from her ashtray. Police and Ms. Rowe conducted a second controlled buy on January 6, 2015, following the same procedures. Ms. Rowe again purchased heroin from the Defendant using the money police had given her, and police

listened to the audio feed, affirming that they heard two women talking. Police followed Ms. Rowe back to the police station, where she handed the purchased heroin directly to Officer Broome, and police again searched her and her car. Ms. Rowe testified that the Defendant again sold her heroin.

Despite the Defendant's arguments, the jury heard testimony regarding the procedures that were used for the controlled buys and Ms. Rowe's criminal history and still accredited her testimony. This court is not to reweigh the evidence or substitute its own inferences for those drawn by the trier of fact. Dorantes, 331 S.W.3d at 379. Viewed in the light most favorable to the State, the record demonstrates that the Defendant sold and delivered heroin to Ms. Rowe within 1,000 feet of a park. A rational trier of fact could easily find as such. The Defendant is not entitled to relief.

### IV. Clerical Errors

We must remand for entry of corrected judgments to rectify clerical errors. See Tenn. R. Crim. P. 36. As noted by the State, the "Special Conditions" portion of Count 3's judgment form states, "This conviction merges into the conviction in Count Three (3)." Only Count 4's judgment form should have this listed as a special condition.

Further, the judgment form for each count has "Standard 30%" checked under "Release Eligibility." However, pursuant to Tennessee Code Annotated section 39-17-432(c) and as noted by the trial court, the Defendant must serve 100% of the minimum sentence because her offenses were committed within 1,000 feet of a park. Only "Drug Free Zone" should be checked in the "Release Eligibility" section. Finally, Counts 3 and 4 have the Defendant's 8-year minimum sentence entered on the "39-17-1324 Poss/Empl of Firearm" line, instead of the above line, which reads "39-17-417, 39-13-513, 39-13-514, or 39-17-432 in Prohibited Zone." The 8-year minimum sentence should be moved to the preceding line, as was correctly entered in Counts 1 and 2.

### CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court but remand for entry of corrected judgments.

_____
ALAN E. GLENN, JUDGE