FILED

December 23, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 8:14 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT JACKSON

| | | |
|---|---|---|
| James Sadler, | ) | Docket No.: 2015-07-0105 |
| Employee, | ) | |
| v. | ) | State File Number: 25829-2015 |
| Tyson Foods, Inc., | ) | |
| Employer, Self-Insured. | ) | Judge Allen Phillips |
| | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, James Sadler, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Mr. Sadler seeks medical benefits for alleged bilateral carpal tunnel injuries. The employer, Tyson Foods, denied the compensability of Mr. Sadler's injuries. The central legal issue is whether Mr. Sadler's alleged carpal tunnel injuries are causally related to his employment at Tyson. For the reasons set forth below, the Court finds that Mr. Sadler is not entitled to the requested benefits at this time.[1]

### History of Claim

Mr. Sadler is a thirty-eight-year-old resident of Weakley County, Tennessee. He works for Tyson in maintenance. On November 22, 2014, Mr. Sadler sustained an injury when a bag of chicken nuggets fell on his right forearm. Tyson provided a panel of physicians from which he chose Dr. Michael Calfee. Dr. Calfee diagnosed a ruptured distal biceps tendon and ultimately performed a surgical repair.

Over the ensuing weeks, Mr. Sadler voiced complaints of bilateral carpal tunnel symptoms.[2] Specifically, Mr. Sadler reported symptoms consistent with right carpal

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] The parties stipulate an injury date of March 30, 2015. However, as discussed hereafter, the evidence is contradictory as to when an injury might have occurred. Whether March 30, 2015, is the precise date of injury is not outcome-determinative.

tunnel to Dr. Calfee on January 19, 2015, and he reported an alleged left carpal tunnel injury to Tyson on March 30, 2015.

On January 19, 2015, Mr. Sadler reported "numbness" in an area of his right hand Dr. Calfee described as, "the median nerve distribution." (Ex. 2 at 6.) Dr. Calfee stated, "I think this probably is carpal tunnel which I do not think would be related to his distal biceps injury." He ordered a "nerve study" to rule out any nerve injury related to the biceps tendon surgery but, stated any carpal tunnel revealed by the study would not be related to the biceps tendon injury. *Id.* A nerve conduction study by Dr. Ronald Bingham on January 23, 2015, revealed "severe median neuropathy at the right wrist." (Ex. 3 at 15.)

At Mr. Sadler's return visit to Dr. Calfee on February 19, 2015, Dr. Calfee noted the diagnosis of severe right carpal tunnel syndrome and stated:

> The question comes into causality of his carpal tunnel. He has worked as a mechanic at Tyson for 6 years, and I am 100% certain that his severe carpal tunnel was not caused by the injury that caused his distal biceps rupture. I say this with a degree of medical certainty. The question is going to be causation, is this another claim. If he is going to be seen for carpal tunnel syndrome, it would have to be done under another claim in my opinion. So I am going to treat him for his distal biceps and he needs to address the carpal tunnel with his employer.

(Ex. 2 at 5.) A return visit to Dr. Calfee on March 19, 2015, noted continued median nerve distribution complaints and Dr. Calfee's reiteration that the numbness, "is not related to his distal biceps repair." *Id.* at 4.

On March 30, 2015, Mr. Sadler reported to Tyson that he was, "tightening a belt and felt shock in *left* hand." (Ex. 12)(Emphasis added.) Tyson provided another panel of physicians from which Mr. Sadler again chose Dr. Calfee. A return visit to Dr. Calfee on April 23, 2015, contains no reference to the event reported by Mr. Sadler on March 30. Instead, on April 23, Dr. Calfee noted that:

> [he] spent a long time with [Mr. Sadler] going over his job. He says really during the week, for the most time, his job is not that labor intensive. He said sometimes when he gets into production, that he does have to do a lot. Most of his work is not terribly labor intensive or hand intensive.

Dr. Calfee recommended carpal tunnel surgery on the *right* wrist and again stated, "I do not think that his right carpal tunnel syndrome is work compensable. I think it is greater than a 51% chance that his employment at Tyson did not cause his carpal tunnel syndrome. I say this with a degree of medical certainty. (Ex. 2 at 3). On April 27, 2015,

Tyson denied the March 30, 2015 claim on grounds that, "per the authorized physician, injury not primarily caused by employment at Tyson." (Ex. 10).

On June 25, 2015, Dr. Calfee released Mr. Sadler from treatment for the right distal biceps tendon injury and assessed a permanent rating for that injury. There was no mention of either right or left carpal tunnel syndrome in that record. (Ex. 2 at 1.) In a letter dated the next day, June 26, 2015, Tyson's counsel corresponded with Dr. Calfee to inquire as to his opinion regarding any relation of the *left* carpal tunnel to the belt tightening event of March 30, 2015. The question from counsel read: "Is your diagnosis of left CTS primarily caused by (51% or more) [by] the claimant's reported, acute incident of tightening a belt on March 30, 2015?" The reply: "No," in the indicated response line with an added notation of, "carpal tunnel was not caused by the acute injury." (Ex. 2.)

On August 26, 2015, Dr. Apurva Dalal performed an independent medical evaluation of Mr. Sadler at the request of Mr. Sadler's counsel. Dr. Dalal recorded the date of injury as "November 2014" and the Mechanism of Injury" as a box of chicken nuggets being dropped on Mr. Sadler's right arm. Mr. Sadler described his injury causing the distal biceps rupture as, "he hyperextended his right elbow which resulted into a distal biceps tendon rupture." He complained of tingling and numbness of both hands, worse on the right. He had no feeling or sense of touch in the right hand. Further, he had been "overusing his left hand and that has caused numbness in his left hand." (Ex. 7 at 1.)

Dr. Dalal reviewed the above-described medical records of Dr. Calfee. On physical examination, he found Mr. Sadler had, "literally no feeling in the right median nerve distribution" and that he had "lost his superficial touch sensation." (Ex. 7 at 2.) Mr. Sadler had "clinical evidence of carpal tunnel syndrome in the left hand." *Id.* After diagnosing, "status post distal biceps tendon repair right elbow, severe right carpal tunnel syndrome and carpal tunnel syndrome left hand," Dr. Dalal assigned separate impairment ratings for each of the conditions. *Id.*

Mr. Sadler filed a Petition for Benefit Determination on June 4, 2015, seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN) on July 21, 2015. Mr. Sadler failed to file a Request for an Expedited or Initial Hearing within sixty days of the filing of the DCN and this matter was placed on the Court's show cause docket. On November 17, 2015, the Court heard the matter at a show cause hearing and, based upon Mr. Sadler's stated intention of pursuing the case, allowed him until the end of November, a period of thirteen days, to file a request for hearing. On November 23, 2015, Mr. Sadler filed a Request for Expedited Hearing, and this Court conducted the hearing on December 16, 2015.

At the Expedited Hearing, Mr. Sadler asserted he sustained bilateral carpal tunnel

3

injuries at Tyson and that he is entitled to medical evaluation and/or treatment of those injuries. He testified that his position in maintenance required the use of hand tools such as "Channel-locks" and screwdrivers. The pain and numbness in the right hand began after the distal biceps injury but, he does not contend the symptoms are related to the distal biceps injury. Instead, he attributes the symptoms to his work with hand tools. He testified the "not terribly labor-intensive" comments of Dr. Calfee were made at a time he was on light duty and Dr. Calfee did not understand his regular job duties. He did *not* in direct testimony describe the belt tightening incident regarding the left arm, but admitted the reporting of that injury on cross-examination. Tyson maintained its denial based on Mr. Sadler's failure to prove his injuries primarily arose out of his employment.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[3] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

For injuries on or after July 1, 2014, an employee must show that he suffered an accidental injury caused by an incident, or specific set of incidents, arising primarily out of and in the course and scope of employment, and identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(13)(A) (2014). "Arising primarily out of and in the course and scope of employment" requires a showing, to a reasonable degree of medical certainty, that the injury causing disablement or the need for medical treatment contributed more than 50% considering all causes. Tenn. Code Ann. § 50-6-102(13)(C) (2014). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes. Tenn. Code Ann.

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

§ 50-6-102(13)(D) (2014). The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(13)(E) (2014).

A preponderance of the evidence means evidence of greater weight, or more convincing, than that evidence offered in opposition. The satisfaction of this preponderance standard requires the finder of fact to evaluate the evidence, determine what evidence is reliable, and determine what evidence is probative to demonstrate the truth of the asserted proposition with the requisite degree of certainty. In other words, a preponderance is such proof as leads the trier of fact to find that it is more probable than not, or more likely than not, that a contested fact exists. *Cribbs v. State*, No. W2006-01381-CCA-R3-PD, 2009 Tenn. LEXIS 524, at *103 (Tenn. Ct. Crim. App. July 1, 2009) *quoting* 32A C.J.S. *Evidence* § 1312 (2005).

Mr. Sadler argues Dr. Calfee only addressed the lack of a relation between the carpal tunnel and the distal bicep tendon rupture. Respectfully, the Court disagrees. Admittedly, on March 19, 2015, Dr. Calfee first did opine, regarding the *right* carpal tunnel, that the "numbness in the median nerve distribution . . . is not related to his distal biceps repair." But, a careful review of Dr. Calfee's records also indicates no history of a gradually-occurring injury. To the contrary, Dr. Calfee noted that Mr. Sadler reported that his work is not "terribly labor intensive or hand intensive."[4] Dr. Calfee specifically noted, on April 23, 2015, that he spent, "a long time with him going over his job." At the conclusion of that visit, Dr. Calfee stated, "I do not think that his right carpal tunnel syndrome is work compensable. I think it is greater than a 51% chance that his employment at Tyson did not cause his carpal tunnel syndrome." Thus, Dr. Calfee does not attribute Mr. Sadler's carpal tunnel complaints in the right arm either to the acute event causing the distal biceps tendon injury *or to any repetitive injury*.

There is no mention of the left arm in Dr. Calfee's records apart from the "ASSESSMENT" section on April 23, 2015. There is no history of *any injury* to the left arm acute or gradual, in Dr. Calfee's records. However, in response to the June 26, 2015 letter from Tyson's counsel, Dr. Calfee opined that the left carpal tunnel is not caused, "51% or more", by the acute incident of "tightening a belt on March 30, 2015." In fact, Dr. Calfee elaborated by stating the, "carpal tunnel was not caused by this acute injury." (Ex. 2). The Court finds no proof in Dr. Calfee's records supporting any relation of Mr. Sadler's left carpal tunnel complaints to his work at Tyson.

---

4 The Court is cognizant of Mr. Sadler's argument that the referenced discussion considered only that the "light duty" Mr. Sadler performed due to the elbow surgery was not "hand intensive." Assuming this to be correct, such argument does not account for the absence of any history in Dr. Calfee's notes regarding the use of tools, any other repetitive-type work, or regular duties being a cause of the carpal tunnel complaints.

5

In this case, Mr. Sadler must rebut Dr. Calfee's opinions by a preponderance of the evidence. The only expert evidence tendered by Mr. Sadler is the IME of Dr. Dalal. The Court finds Dr. Dalal does not rebut Dr. Calfee's opinions by a preponderance of the evidence. In so finding, the Court notes that Dr. Dalal diagnosed Mr. Sadler with residuals from a distal biceps tendon repair and bilateral carpal tunnel syndrome. He assesses permanent impairment for both conditions. His report notes the "mechanism of injury" was the event causing the biceps tendon injury and, additionally notes Mr. Sadler reported "over-compensating" with his left arm after the right arm injury. But, Dr. Dalal does not provide any opinion regarding the relation of either the left or right carpal tunnel conditions to the work at Tyson. Hence, the Court has only the opinion of Dr. Calfee.

Mr. Sadler argued that his case points out the "problem" of medical providers making "legal determinations" as to causation on "behalf of clients and insurance companies." Further, Mr. Sadler argued he could establish causation if both doctors were presented a complete history. He argues that *DeGalliford v. United Cabinet Co., LLC*, No. M2013-00943-WC-R3-WC, 2014 Tenn. LEXIS 194 (Tenn. Workers' Comp. Panel March 17, 2014) interpreted, in his words, "any progression or advancement or increase in severity of an underlying condition" as "51%", or the primary cause of an injury. It follows, under his logic, that because his carpal tunnel is "pre-existing," *DeGalliford* should apply. The Court disagrees. In *DeGalliford*, the court had before it evidence that the subject injury was primarily caused by the work activity. Even if Mr. Sadler's carpal tunnel is "preexisting," any compensable aggravation must be shown, by expert proof, to have arisen primarily out of the work at Tyson. In *DeGalliford*, there was such proof; here there is not.

Without expert medical evidence, Mr. Sadler has failed to meet his burden of proving his injuries arose primarily out of and in the course and scope of his employment. Therefore, as a matter of law, he has not come forward with sufficient evidence from which this Court may conclude that he is likely to prevail at a hearing on the merits. The Court denies the request for medical benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Sadler's claim against Tyson for the requested medical benefits is denied at this time.

2. This matter is set for an Initial (Status) Hearing on February 17, 2016, at 9:00 a.m. Central time.

**ENTERED this the 23rd day of December, 2015.**

6

Judge Allen Phillips
Court of Workers' Compensation Claims

Initial (Status) Hearing:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 901-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

7

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of James Sadler;
2. Medical Records of Dr. Michael Calfee;
3. Medical Records of Dr. Ronald Bingham;
4. Medical Records of Union City Surgery Center;
5. Medical Records of Baptist Memorial Hospital;
6. Medical Records of Star Physical Therapy;
7. Independent Medical Evaluation of Dr. Apurva Dalal;
8. Choice of Physician Form (C-42), November 24, 2014;
9. Choice of Physician Form (C-42), April 6, 2015;
10. Notice of Denial and letter to Mr. Sadler re: same;
11. First Report of Injury (C-20), November 22, 2014 DOI; and
12. First Report of Injury (C-20), March 30, 2015 DOI.

Technical record:
1. Petition for Benefit Determination, filed on June 4, 2015;
2. Dispute Certification Notice, filed on July 21, 2015;
3. Request for Expedited Hearing, filed on November 23, 2015; and
4. Tyson's Response to Expedited Hearing.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 23rd day of December, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jeffrey P. Boyd, Employee's Counsel | | | X | jboyd@hillboren.com |
| Heather Hardt Douglas and Travis Ledgerwood, Employer's Counsel | | | X | hdouglas@manierherod.com<br>tledgerwood@manierherod.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**