

**FILED**
**Apr 09, 2020**
**03:10 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| William Barnes | ) | Docket No. 2018-05-1127 |
| | ) | |
| v. | ) | State File No. 53470-2018 |
| | ) | |
| Jack Cooper Transport Co., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard March 24, 2020, at Knoxville |
| Compensation Claims | ) | |
| Dale A. Tipps, Judge | ) | |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

In this interlocutory appeal, the employee reported that his left knee gave way while he was climbing a ladder at work. The employee had suffered a work-related injury to his left knee several years before when his employer had workers' compensation coverage with a different insurer. The employee also had been diagnosed with pre-existing osteoarthritis in his left knee unrelated to his work injuries. One physician testified that the employee's current need for a total knee arthroplasty was caused primarily by his pre-existing osteoarthritis. Another physician opined that the most recent work accident caused an exacerbation of his pre-existing osteoarthritis. The trial court concluded the employee is likely to prevail at trial in proving the need for a total knee arthroplasty arose primarily from the most recent work accident, and it ordered the employer to authorize treatment, including any recommended surgery. The employer and its current insurer have appealed. We affirm the trial court's decision to the extent it orders the employer to provide reasonable and necessary medical benefits causally related to the most recent work injury. However, we reverse the trial court's order compelling the employer and its current insurer to authorize the total knee arthroplasty, and we remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Pele I. Godkin joined.

A. Allen Grant, Nashville, Tennessee, for the appellants, Jack Cooper Transport Co. and National Interstate Ins. Co.

Richard L. Dugger, Shelbyville, Tennessee, for the employee-appellee, William Barnes

Sara E. Barnett, Jackson, Tennessee, for the appellee, Continental Indemnity Co.

**Factual and Procedural Background**

William Barnes ("Employee"), a fifty-year-old resident of Marshall County, Tennessee, worked for Jack Cooper Transport ("Employer") as a truck driver for approximately twenty-four years. It is undisputed that Employee had experienced problems with his left knee since at least 1998, when he complained of "some popping in his knee." In 2007, Employee complained of pain in his left knee after bumping it against a truck rail. In 2011, a physician noted "mild activity in the medial left knee" that was "most likely . . . related to degenerative joint disease."

In February 2013, Employee was climbing a ladder on the side of a transport truck when he felt a pop and pain in his left knee. The accident was treated as compensable, and his benefits were paid by Employer's insurer at the time, Continental Indemnity Company ("Continental"). Employee was diagnosed with a medial meniscal tear with underlying degenerative changes, and he underwent surgical repair in June 2013. The treating physician at that time, Dr. Jason Haslam, concluded the medial meniscal tear was causally related to the work accident but that Employee's underlying degenerative changes were pre-existing and not related to the work accident. Employee's claim for workers' compensation benefits was settled in February 2014, and his right to causally-related future medical benefits remained open.

Following his 2013 work injury, Employee returned to work for Employer. He had been released to work by Dr. Haslam without restrictions. He returned to the same job performing the same tasks as before the 2013 accident. He denied having any problems after returning to work until mid-2018. On July 10, 2018, Employee reported another incident while climbing a ladder to secure vehicles to a trailer for transport. Employee explained that as he neared the top of the ladder, his left knee "gave out and collapsed." He was able to finish tying down the vehicles, and he made his delivery. However, he claimed that operating the clutch in his truck increased the symptoms in his left knee. After completing his delivery, Employee reported the incident to Employer.

Employee was first seen at a Concentra facility where he was diagnosed with a left knee strain. He was referred for two weeks of physical therapy and was released to return to work with restrictions. A July 25, 2018 MRI was interpreted as showing a strain of the anterior cruciate ligament, and Employee was referred to an orthopedic specialist. Thereafter, Employer provided a panel of orthopedic specialists, and Employee selected a physician. However, the physician Employee selected declined to evaluate or treat him. As a result, Employee was instructed to select from the remaining two physicians. He requested another physician to replace his original selection on the panel but was not provided a third option. He then selected Dr. Blake Garside, an orthopedic surgeon.

In his September 5, 2018 report, Dr. Garside reviewed Employee's reported history of left knee problems and his description of the most recent work accident. Dr.

2

Garside noted the July 25 MRI, which he described as revealing "interval worsening and progression of the degenerative change, most pronounced in his medial and patellofemoral compartments." Dr. Garside concluded Employee "appears to have exacerbated his pre-existing left knee osteoarthritis." He prescribed anti-inflammatory medication and recommended a knee injection, which he administered at that visit. Dr. Garside discussed the possibility of a total knee replacement, which he explained "would be a procedure performed for his pre-existing left knee osteoarthritis."

In the report of Employee's second visit on October 3, 2018, Dr. Garside expounded on his causation opinions as follows:

> He has worked in the same position for 23 years. His current symptoms in my opinion represent exacerbation of his pre-existing osteoarthritis. If the history provided by [Employee] is correct, it is likely that his current osteoarthritis represented posttraumatic osteoarthritis from his previous work injuries. I do not have any of his previous records available for our review.

As a result of the opinions expressed by Dr. Garside, Employer and its current insurer, National Interstate Insurance Company ("National"), denied Employee's request for authorization of the total knee replacement. It asserted Employee's need for the surgery did not arise primarily from the 2018 work accident but was related to Employee's pre-existing osteoarthritis. Thereafter, Employer sent Dr. Garside a request to review records from Employee's prior left knee treatment. In an April 1, 2019 letter to Employer's counsel, Dr. Garside opined as follows:

> In my opinion, the last incident of July 10, 2018, did not contribute more than 50% in causing the need for [Employee] to undergo a total knee arthroplasty and the July 10, 2018[] incident did not contribute more than 50% in causing his current left knee issues, which are related to preexisting left knee osteoarthritis.

In December 2018, Employee sought treatment on his own at Seven Springs Orthopaedic & Sports Medicine, the same practice where he had treated in 2013. In a December 5, 2018 report, the providers are listed as Brian Masterson, PA-C and Brant Bell, PA-C; however, the end of the record bears the names Jason Jones, M.D., Joe Wieck, M.D., and Jim Renfro, M.D.[1] In a subsequent report dated September 16, 2019, the provider is listed as Brian Masterson, PA-C, but the end of the report bears the name Jason Jones, M.D. In this report, the provider stated as follows:

---

[1] The physicians' names are typed at the end of the report, but there is no signature or anything to designate an official electronic signature.

The patient hurt his knee while working on July 10, 2018. He had an exacerbation of pre-existing arthritis and sought our care on December 5, 2018. His attorney has sent us a letter inquiring about this being a new injury or previous injury. In my medical opinion, I believe this is a new injury that exacerbated a pre-existing condition. It is hard to determine the extent of the injury. However, he was previously doing well by his report up until re-injury.

Thereafter, on November 4, 2019, Dr. Jones issued a letter that bears his signature. In it, he described both the 2013 and the 2018 work accidents. He then opined:

It is my opinion the second injury is the cause of his ongoing pain despite having underlying osteoarthritis since the first injury[,] which was remedied surgically. He ultimately needs a total knee arthroplasty and I would agree with Dr. Garson [sic] on his treatment plan. He clearly is in need of surgical intervention and will likely not get sustained relief from conservative measures. At this point, I believe his second injury is the cause of his ongoing pain, which was an exacerbation of osteoarthritis.

Employee filed a request for an expedited hearing, asking the trial court to order Employer to authorize medical treatment including the total knee arthroplasty. Attorneys for both National and Continental appeared and argued their clients' respective positions.[2] Thereafter, the trial court determined Employee was likely to prevail at trial in showing that the most recent work accident caused a compensable aggravation of his pre-existing left knee condition, and that Dr. Jones's causation opinion was "more persuasive." As a result, it ordered Employer to provide "medical treatment made reasonably necessary by [Employee's] July 10, 2018 injury, including any recommended surgery." Employer and National have appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2019). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar

---

[2] The hearing transcript indicates that one attorney appeared on behalf of Employer and National, and another attorney appeared on behalf of Continental. Although a motion to dismiss Continental was pending at the time of the expedited hearing, the trial court stated it would not address that motion as part of the expedited hearing. Employee's counsel advised the court that Employee had no objection to Continental's counsel participating in the expedited hearing. Counsel for Employer and National did not object to Continental's counsel participating in the hearing.

deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2019).

## Analysis

Employer identified three issues on appeal, which we combine and restate as follows: (1) whether the trial court erred in determining the panel of physicians offered to Employee was invalid; and (2) whether the trial court erred in accepting Dr. Jones's opinions over those of Dr. Garside and in concluding Employee is likely to prevail at trial in proving the need for a total knee replacement arose primarily from the July 10, 2018 work injury.

### *Selection of Panel Physician/Presumption of Correctness*

When a work injury is reported, an employer is required to "designate a group of three (3) or more independent reputable physicians . . . if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2019). Further, the law specifically addresses the situation in which a selected physician declines to accept the employee as a patient:

> If any physician . . . included on a panel provided to an employee under this subsection declines to accept the employee as a patient for the purpose of providing treatment to the employee for his workers' compensation injury, the employee may either select a physician from the remaining physicians . . . included on the initial panel . . . or request that the employer provide an additional choice . . . to replace the physician . . . who refused to accept the injured employee as a patient for the purpose of treating the employee's workers' compensation injury.

Tenn. Code Ann. § 50-6-204(a)(3)(G). Thus, the law is clear that it is the employee, not the employer, who has the option of requesting a replacement physician on a panel under circumstances where the physician originally selected declines to accept the employee as a patient. Here, Employer initially provided Employee with a proper panel, but the

doctor Employee selected declined to accept Employee as a patient. At the expedited hearing, Employee testified as follows:

> Q: Okay. Did the insurance carrier at that time give you a panel?
>
> A: They sent me down – the insurance company sent me a panel of three doctors. . . . And I picked Dr. Moore. And then I think it was two days prior . . . they e-mailed us back and said, you need to pick another doctor because Dr. Moore will not take your case. So we already reviewed all three of the doctors on panel, and we liked Dr. Moore because of the reviews he got. And so I asked the insurance company, I said, Hey, I need to get another pick. I e-mailed her back, and I said, I'd like to have another doctor added since you took one away. And she said, we already gave you a panel of three; you have to pick now. So we picked Dr. Garside.
>
> Q: Okay. So they took the one you picked away and told you [that] you had to pick from the two?
>
> A: Yes.

Employer does not dispute that Employee was not offered a third option after the original physician declined to accept Employee as a patient. Instead, Employer argues that, while there were ultimately only two physicians on the panel, Employee nevertheless made a selection from the panel. Therefore, according to Employer, the selected physician should be deemed the authorized treating physician whose causation opinion is entitled to a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(14)(E) (2019). We disagree. Instead, we conclude Employer's panel was rendered defective by its unwillingness to offer a replacement physician when requested to do so by Employee under the circumstances presented in this case. As a result, Dr. Garside, although designated by Employer as an authorized treating physician, was not selected from a valid panel pursuant to section 50-6-204(a)(3), and his causation opinion is not entitled to a presumption of correctness as described in section 50-6-102(14)(E).

*Expert Medical Opinions and Evidence of Causation*

We have previously addressed the analysis of claims hinging on an alleged aggravation of a pre-existing condition as follows:

> Determining the compensability of an alleged work-related aggravation of a preexisting, degenerative medical condition has long been a source of difficulty under Tennessee's Workers' Compensation Law. The general

assembly has, in recent years, sought to clarify this issue through statutory amendments.

. . . .

[A]s part of the 2013 Workers' Compensation Reform Act, the general assembly . . . amended the definition of "injury":

> "Injury" and "personal injury" mean an injury by accident, . . . or cumulative trauma conditions . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee; provided that:

> (A) An injury . . . shall not include the aggravation of a preexisting disease, condition or ailment *unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment.*

*Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0518, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *7-9 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015) (quoting Tenn. Code Ann. § 50-6-102(14) (emphasis added)). We concluded in *Miller* that "an employee can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident contributed more than fifty percent (50%) in causing the aggravation, and (2) the work accident was the cause of the aggravation more likely than not considering all causes." *Id.* at *13. In addition, when the dispute centers on a request for medical treatment, the burden at an expedited hearing is on the employee to show he or she is likely to prevail at trial in proving that the work injury "contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C).

Moreover, in *Miller*, we addressed the definitions of the terms "aggravation" and "exacerbation" in a medical context. *Id.* at *14-15. We noted that although the American Medical Association's Guides to the Evaluation of Permanent Impairment defines those terms differently, the General Assembly did not adopt or acknowledge those definitions in Tennessee's workers' compensation statutes. *Id.* at *15. We also noted that physicians often use those terms interchangeably. *Id.* Therefore, when analyzing medical evidence, we conclude it is necessary to consider the relevant medical records and expert opinions in their entirety in an effort to understand the intended meaning of those terms as used by any particular physician.

7

It is well-established that, when faced with competing expert medical opinions, "trial courts are granted broad discretion in choosing which opinion to accept, and we will not disturb that decision absent an abuse of discretion." *Jimenez v. Xclusive Staffing of Tenn., LLC*, No. 2016-06-2377, 2017 TN Wrk. Comp. App. Bd. LEXIS 45, at \*6 (Tenn. Workers' Comp. App. Bd. Aug. 7, 2017). A trial court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 348, 358 (Tenn. 2008); *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005). Moreover, we are charged with reviewing deposition testimony and documentary evidence *de novo*. *See Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at \*16 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015) ("[T]he trial court occupies no better position than this Appeals Board in reviewing and interpreting documentary evidence."). Also, when the trial court's determination is challenged on appeal, we must determine where the preponderance of the evidence lies. *See* Tenn. Code Ann. § 50-6-239(c)(7).

In the present case, the authorized treating physician, Dr. Garside, concluded that Employee's need for a total knee arthroplasty arose primarily from his pre-existing osteoarthritis. More precisely, Dr. Garside stated:

> In my opinion, the last incident of July 10, 2018, did not contribute more than 50% in causing the need for [Employee] to undergo a total knee arthroplasty and the July 10, 2018[] incident did not contribute more than 50% in causing his current left knee issues, which are related to preexisting left knee osteoarthritis.

Although we have concluded Dr. Garside's opinion was not entitled to a presumption of correctness, we note that his opinion is unequivocal and must be weighed against other expert opinions offered during the expedited hearing.

In comparison, the expert opinions offered by Employee in support of his position are problematic. First, it is unclear from the medical records of Seven Springs Orthopaedics whether a physician was actually expressing the medical opinions contained in those records. The providers were identified as physician's assistants.[3] There is no indication in the medical records that a physician independently expressed or adopted the opinions contained in those records. Indeed, Employee was unable to testify definitively whether he actually saw a physician during his visits at that practice.

---

[3] A physician's assistant, like a nurse practitioner, is not qualified under our laws to offer an expert opinion on medical causation. *See Adiole v. Logan Senior Care, LLC*, No. 2018-06-0451, 2019 TN Wrk. Comp. App. Bd. LEXIS 78, at \*6 (Tenn. Workers' Comp. App. Bd. Dec. 16, 2019).

Second, the one document produced by Employee that was signed by a physician, Dr. Jones's November 4, 2019 letter, did not contain an unequivocal opinion supporting Employee's claim. Instead, Dr. Jones opined that the most recent work accident was "the cause of his ongoing pain." He described the incident as causing an "exacerbation of osteoarthritis" and agreed a total knee arthroplasty was needed. However, he neither opined that the exacerbation of Employee's pre-existing osteoarthritis was the primary cause of the need for the total knee arthroplasty, considering all causes, nor did he use words to that effect. *See* Tenn. Code Ann. § 50-6-102(14)(C).

It is well-settled that in cases where the employee alleges an aggravation of a pre-existing condition, evidence of a mere increase in pain caused by a work accident, with no accompanying evidence that the work accident advanced the severity of the pre-existing condition or caused an anatomic change in that condition, is insufficient to support a finding of compensability. *See, e.g.*, *Berdnick v. Fairfield Glade Comm'y Club*, No. 2016-04-0328, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *12 (Tenn. Workers' Comp. App. Bd. May 18, 2017); *Fly v. Travelers Ins.*, No. W2011-01215-WC-WCM-WC, 2012 Tenn. LEXIS 642, at *7 (Tenn. Workers' Comp. Panel Sept. 20, 2012). Furthermore, in order for pain to constitute a compensable aggravation of a pre-existing condition, there must be evidence that the pain itself was disabling. *See Hill v. Eagle Bend Mfg.*, 942 S.W.2d 483, 488 (Tenn. 1997).

In the present case, Employee's expert, Dr. Jones, opined that the most recent work accident was the cause of Employee's ongoing pain and exacerbated his pre-existing osteoarthritis. But there is no opinion from Dr. Jones that the exacerbation advanced Employee's pre-existing osteoarthritis, that the work accident caused an anatomic change in his pre-existing condition, or that the pain Dr. Jones described was, itself, disabling. There is also no evidence that the need for a total knee arthroplasty arose primarily from the most recent work accident when all causes were considered. Moreover, the record contains no evidence as to: (1) whether Dr. Jones ever examined Employee; (2) whether Dr. Jones supervised the examinations of Employee performed by the physician's assistants; (3) whether Dr. Jones adopted the findings and opinions expressed by the physician's assistants in the medical records; or (4) even whether Dr. Jones is, in fact, a board-certified orthopedic surgeon.

By contrast, Dr. Garside testified unequivocally that the most recent work accident was not the primary cause of the need for a total knee arthroplasty. It is undisputed that Dr. Garside examined Employee on two occasions, and Dr. Garside's deposition testimony makes clear that he is a board-certified orthopedic surgeon who specializes in the treatment of knees and shoulders and who performs seventy-five to one hundred knee replacements each year. Under such circumstances, we cannot conclude that the preponderance of the medical evidence supports the trial court's decision to credit the opinions of Dr. Jones over those of Dr. Garside. In addition, we conclude the trial court's decision to rely on Dr. Jones's opinions was an abuse of discretion under these

circumstances because its decision was based on a "clearly erroneous assessment of the evidence," *Ostein*, 293 S.W.3d at 526, causing an injustice to Employer.

Finally, the trial court relied heavily on Employee's lay testimony indicating that he suffered from none of his current left knee symptoms before the July 10, 2018 accident. The court concluded this testimony was persuasive and credible. While we agree an employee's lay testimony is relevant and material to the issue of medical causation, it is not enough to support an order for medical benefits in the absence of corroborating expert proof. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *12 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). For the reasons discussed above, we conclude the trial court erred in concluding Employee's lay testimony and the opinions expressed by Dr. Jones outweighed the unequivocal testimony of Dr. Garside with respect to the need for a total knee replacement surgery.

Before concluding, we note that, in its expedited hearing order, the trial court ordered Employer to provide Employee "with medical treatment made reasonably necessary by his July 10, 2018 injury, *including any recommended surgery*." (Emphasis added). The court then stated, "Dr. Garside shall continue as the authorized treating physician." As discussed above, we believe the trial court erred in accepting the causation opinion of Dr. Jones over that of Dr. Garside. On the other hand, we agree Employee is entitled to reasonable and necessary medical treatment causally related to the July 10, 2018 work accident. However, the evidence presented at the expedited hearing does not support an order compelling Employer and its current insurer to authorize the total knee arthroplasty at this time.

## Conclusion

For the foregoing reasons, we affirm the trial court's decision to the extent it orders Employer and National to provide reasonable and necessary medical care causally related to the most recent work accident, but we reverse the trial court's order to the extent it compels Employer and National to authorize the total knee arthroplasty. The case is remanded and costs are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| William Barnes | ) | Docket No. 2018-05-1127 |
| | ) | |
| v. | ) | State File No. 53470-2018 |
| | ) | |
| Jack Cooper Transport Co., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard March 24, 2020, at Knoxville |
| Compensation Claims | ) | |
| Dale A. Tipps, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of April, 2020.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Richard L. Dugger | | | | X | rldugger65@hotmail.com |
| A. Allen Grant | | | | X | agrant@eraclides.com |
| Sara E. Barnett | | | | X | saraebarnett@spraginslaw.com |
| Dale A. Tipps, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov