FILED
Jun 29, 2022
07:00 AM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Salvador Enriquez | ) Docket No.     2020-02-0318 |
| | ) |
| v. | ) State File No.  101315-2019 |
| | ) |
| Defender Services, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Brian K. Addington, Judge | ) |

---

### Affirmed and Remanded

---

The employee, a machine operator, reported experiencing left knee pain when he missed a step and fell backward while climbing a metal ladder attached to a machine. The employer accepted the compensability of the claim and initiated medical benefits, although it did not offer the employee a proper panel of physicians. After extensive conservative treatment and surgery did not resolve the employee's continued symptoms, the treating physician recommended a total knee replacement. The employer scheduled a medical evaluation with a different orthopedic physician, who opined that the need for the surgery was primarily related to a congenital condition and preexisting arthritic changes. In response, the treating physician opined that the work accident aggravated the employee's preexisting condition and was more than fifty percent the cause of the need for the surgery. Following an expedited hearing, the trial court ordered the employer to authorize the surgery as recommended by the treating physician, and the employer appealed. Upon careful consideration of the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

J. Brent Moore, Nashville, Tennessee, for the employer-appellant, Defender Services, Inc.

Daniel R. Bieger, Bristol, Tennessee, for the employee-appellee, Salvador Enriquez

**Factual and Procedural Background**

Salvador Enriquez ("Employee") worked for Defender Services, Inc. ("Employer"), as a machine operator. On September 19, 2019, Employee was climbing metal stairs attached to a machine when he missed a step and fell backward to the bottom of the stairs. As a result of this accident, Employee experienced left knee pain.[1] After Employee reported the incident to Employer, he was taken to Johnson County Community Hospital where x-rays of the left knee revealed "large joint effusion" but no fractures. He was diagnosed with left knee strain and joint effusion. Thereafter, Employee was told he could choose to see a physician in Johnson City or a physician in North Carolina. He chose to see an orthopedic physician in Johnson City.

The day after the accident, Employee was evaluated at Appalachian Orthopedic Associates by a physician's assistant. During the physical examination, the provider noted that the left knee was "diffusely swollen with moderate effusion." The provider apparently recommended an MRI but, according to a later note, the MRI was not authorized. Employee was diagnosed with "internal derangement of the left knee," and a follow-up appointment was scheduled five days later with Dr. Larry Waldrop, an orthopedic surgeon.

On September 25, 2019, Employee first saw Dr. Waldrop. Following his physical examination, Dr. Waldrop concluded Employee likely suffered from patella dislocation as a result of the work accident. He placed Employee in a knee brace and recommended light duty work restrictions. He prescribed six weeks of physical therapy and, if Employee did not show significant improvement during therapy, an MRI.

After completing the course of physical therapy, Employee continued to experience instability of the knee when not wearing the brace. At Dr. Waldrop's request, Employee underwent an MRI of the left knee in November, which revealed a "patella alta deformity" and severe chondromalacia in several areas of the knee with "adjacent osteophytes present." According to the radiologist, these findings were "consistent with 3 compartment osteoarthropathy." On December 3, 2019, after reviewing the MRI results and concluding Employee suffered from a "lateral subluxed position patella," Dr. Waldrop recommended arthroscopic surgery with "reconstruction to position the patella in a better position."

The surgery was completed January 6, 2020, which included chrondroplasty, removal of loose bodies, and "patellofemoral ligament reconstruction." Approximately ten days after surgery, Dr. Waldrop recommended additional physical therapy, which began in late January. On February 11, Dr. Waldrop noted that Employee was not ready to return to work but needed additional therapy. On March 24, Dr. Waldrop noted Employee had

---

[1] In several medical records, Employee complained of pain and symptoms in both knees. In some records, Employee reported he had injured his right knee in the work accident. In other records, he asserted he was "overcompensating" as a result of his left knee injury, causing pain and symptoms in his right knee. Because treatment for the right knee is not at issue in this appeal, we need not address this issue further.

continued complaints of pain and numbness across the knee, with "crepitus behind both knees." He recommended additional therapy with weight bearing as tolerated. Employee was released to return to work and restricted to "desk duty only."

In May 2020, Dr. Waldrop noted slow progress in therapy. Employee complained of difficulty going up and down stairs. Dr. Waldrop provided a cortisone injection and maintained Employee's light duty work restrictions. On June 9, 2020, Employee complained of increased pain in the left knee and sought Dr. Waldrop's recommendations for additional treatment. Dr. Waldrop prescribed additional physical therapy and noted Employee had reached maximum medical improvement, but he also commented that "he may need knee replacements in the future as he gets older" and that he "[m]ay have to find a different type of work."

Employee returned to Dr. Waldrop in July 2020 with continued complaints of left knee pain. Dr. Waldrop noted that Employee had "tried to do a little yard work" and experienced increased pain since then. Dr. Waldrop also noted "moderate effusion" and tenderness over the lateral joint line of the left knee and recommended another MRI. On July 21, 2020, Dr. Waldrop completed a "Final Medical Report" (Form C-30A) indicating that Employee would need future medical treatment for his work injury and that he had sustained a permanent medical impairment of eight percent as a result of the work injury.

In October 2020, Dr. Waldrop noted Employee was "on an arthritic pathway" and administered a left knee injection "for both diagnostic and therapeutic purposes." He indicated Employee's "patellofemoral osteoarthritic component is a chronic issue," adding that Employee "denies any pain prior and is now having increased pain there since the injury." When Employee next saw Dr. Waldrop to discuss available treatment options, Dr. Waldrop noted that Employee had left knee osteoarthritis "post patella dislocation with exacerbation of his arthritic symptoms as far as the left knee was concerned." He indicated "the plan would be for pain purposes only, a left total knee arthroplasty, which is about the only thing I can offer him at this point." In January 2021, Dr. Waldrop addressed the issue of causation, stating that the need for a total knee replacement "is work related especially the retropatellar space and the treatment would be the same even despite having some degenerative knee issues prior to the injury even if that were the case." On January 29, 2021, Employer's utilization review provider recommended certification of the total knee replacement as medically necessary.

On March 10, 2021, Employee was seen at Employer's request by Dr. William Hovis, an orthopedic surgeon. With respect to Employee's relevant history, Dr. Hovis noted Employee had "injured both knees" on September 19, 2019. Employee told Dr. Hovis that he was rendered unconscious by the fall and, when he awoke, had "immediate pain in his left leg." Dr. Hovis acknowledged he did not have the MRI images of the left knee available for review. As of the date of Dr. Hovis's physical examination, Employee complained of pain in both knees, left worse than right. Dr. Hovis diagnosed Employee

3

with moderate degenerative arthritis in both knees and moderate to severe patella femoral arthritis in both knees. He then wrote, "I am not recommending any immediate surgical procedures to be performed on either knee pending his response to an extremely serious consistent fitness, weight loss, and rehab program . . . ."

In a letter to Employer's counsel accompanying his medical report, Dr. Hovis noted that Employee has "significant bilateral lateral subluxation" of both patellas. He then described this as an "inherited objective structural characteristic." Regarding the issue of medical causation, Dr. Hovis stated as follows:

> Given the fact that neither the several lateral tracking of his patellas is a result of his described work related injury and given the fact that he has secondary severe arthritis changes in the patella femoral portion of his knee joints, it is felt by me that greater than 51% of his gentleman's previous and current knee problems are a result of a congenital developmental condition in his knee and not the result of once acute knee injury . . . . [H]e has had longstanding secondary changes in both knees which are the result of his congenital lateral tracking patella mal-alignment. These arthritis changes would not develop to this degree of severity in the period of time from his injury to the current examination.

In May 2021, Dr. Waldrop responded to a questionnaire from Employee's counsel, indicating that his ultimate diagnoses were right knee osteoarthritis, left knee patella dislocation, and left knee post-traumatic osteoarthritis. He indicated "yes" in response to the question asking "[i]n your medical opinion, do the conditions for which you are treating [Employee] arise out of the September 19, 2019 accident?" Following an expedited hearing in June 2021, the trial court denied Employee's request for an order compelling Employer to approve the total knee replacement recommended by Dr. Waldrop. That order was appealed, and we affirmed.

Thereafter, both Dr. Waldrop and Dr. Hovis were deposed. In addressing the cause of Employee's need for a total left knee replacement, Dr. Waldrop testified, "[H]is knee arthritis was aggravated by the patella dislocation . . . . Even if it had some chronic changes, it definitely was exacerbated by his left knee injury." Dr. Waldrop noted his current diagnosis was "patella dislocation with components of some post-traumatic osteoarthritis or arthritis of the knee made worse by the knee dislocation." Finally, when he was asked whether Employee's current left knee problem arose primarily from the work accident, Dr. Waldrop responded, "yes, at least more than 51 percent. I think that's fair based on the trauma." On cross-examination, when Dr. Waldrop was asked whether Employee's osteoarthritic changes were chronic and preexisting, he replied, "There's no way to – well, unlikely to be. It looked like it could be an acute or chronic exacerbation of the problem, but the acute damage to that cartilage is 100 percent."

4

Conversely, Dr. Hovis testified that, in his opinion, Employee's primary problems were a congenital defect and "significant degenerative arthritis" in both knees. Regarding the issue of causation, Dr. Hovis testified, "I felt that more than 51 percent of the causation of his symptomatology was not due to his injury but due to preexisting conditions." He continued, "I felt that the ultimate need for total knee arthroplasty in one or either knees [sic] [was] predominantly and primarily a result of the arthritic changes that he had already developed before the injury." Dr. Hovis then summarized the objective data he believed supported his opinion that the arthritic changes preceded the work-related knee injury and explained:

> I emphasized that I am in no way stat[ing] that he did not . . . have a work-related injury, but it was my opinion that his work-related injury resulted in an aggravation of these preexisting conditions, and that the preexisting conditions were the dominant reason for his knee difficulties and the ultimate underlying dominant reason for his potentially needing knee replacement arthroplasties in one or both knees.

During cross-examination, Dr. Hovis agreed that Employee sustained a work-related injury. Specifically, Dr. Hovis stated, "assuming his history is true, and I had no reason to doubt it, I think he got injured, maybe significantly." He also agreed that there was no evidence Employee had reported problems with or symptoms related to his knees prior to the work-related accident. Finally, Dr. Hovis acknowledged that he saw no evidence of a prior acute injury or prior surgery to Employee's left knee.

Employee was also seen and evaluated by Dr. Todd Hannula, an orthopedic surgeon.[2] Dr. Hannula noted in his March 9, 2022 report that Employee suffered from significant weakness in the left knee and severe post traumatic patellofemoral osteoarthritis. He also noted that Employee reported severe left knee pain that renders him unable to "return to his usual work." In response to a questionnaire from Employee's attorney, Dr. Hannula agreed that "Employee's complaint about his left knee [is] more than 51% related to his work-related injury of September 19, 2019."

The trial court conducted a second expedited hearing on March 31, 2022, during which Employee testified live. Among multiple other exhibits, the depositions of Drs. Waldrop and Hovis and the March 9, 2022 report of Dr. Hannula were submitted for the court's consideration. Thereafter, the trial court issued an order in which it determined that Employee was likely to prevail at trial in proving that his need for a total left knee arthroplasty arose primarily from the work-related injury, and it ordered Employer to authorize the surgery as recommended by Dr. Waldrop. Employer has appealed.

---

[2] Although a questionnaire submitted to Dr. Hannula indicated he first evaluated Employee in November 2021, the only report in the record on appeal from Dr. Hannula is dated in March 2022.

5

## Standard of Review

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). Moreover, a trial court has the discretion to determine which testimony to accept when presented with conflicting expert opinions, and we review such determinations using an abuse-of-discretion standard. *Johnston v. Siskin Steel & Supply Co.*, No. E2020-00799-SC-R3-WC, 2021 Tenn. LEXIS 241, at *30-31 (Tenn. Workers' Comp. Panel Feb. 10, 2021). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

## Analysis

When a trial court is faced with conflicting expert opinions, it may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). As noted above, we review such determinations under an abuse-of-discretion standard. *Sanker v. Nacarato Trucks, Inc.*, No. 2016-06-0101, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *12 (Tenn. Workers' Comp. App. Bd. July 6, 2016). A trial court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009).

Here, the trial court was required to consider and compare the expert opinions offered by three orthopedic surgeons in light of the totality of the evidence, including Employee's testimony. There is no dispute that a work injury occurred or that Employer authorized medical treatment for the left knee injury. The crux of this case hinges on whether there was sufficient evidence that the need for a left total knee replacement arose primarily from the work-related injury.

In comparing the expert opinions, the trial court noted that Dr. Hovis had the opportunity to see Employee on only one occasion, whereas Dr. Waldrop examined him

6

on multiple occasions over the course of more than two years, with the first examination being approximately one week after the work injury. Dr. Waldrop also examined the interior of Employee's left knee during the first surgery. The trial court determined that Dr. Waldrop "provided a detailed explanation of how he came to his opinion," which the trial court credited over that of Dr. Hovis. Finally, the trial court emphasized Employee's unrefuted testimony that he had no problems with his left knee prior to the work accident, which further supports Dr. Waldrop's opinion that the work accident aggravated or exacerbated Employee's preexisting condition.

Although we conclude that both Dr. Waldrop's and Dr. Hovis's causation opinions were thorough and compelling, we cannot conclude the trial court erred in accepting the opinion of the treating physician over that of an evaluating physician. We also conclude the totality of the evidence presented to date does not preponderate against the trial court's determination that Employee is likely to prevail on this issue at trial. We therefore affirm the trial court's order in all respects.

## Conclusion

Accordingly, for the reasons set out above, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.

7



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Salvador Enriquez | ) | Docket No. 2020-02-0318 |
| | ) | |
| v. | ) | State File No. 101315-2019 |
| | ) | |
| Defender Services, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 29th day of June, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| J. Brent Moore | | | | X | bmoore@ortalekelley.com<br>ccaruso@ortalekelley.com |
| Daniel Bieger | | | | X | dan@biegerlaw.com<br>paige@biegerlaw.com |
| Brian K. Addington, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov